499 F.2d 130
 8 Fair Empl.Prac.Cas. 365, 8 Empl. Prac. Dec. P 9496
Wardell F. CLARK, Appellant,
v.
Captain R. W. GOODE, Commanding Officer, U.S. Coast Guard
Yard, Curtis Bay, Maryland, Appellee.
 No. 73-2519.
 United States Court of Appeals, Fourth Circuit.
 Argued April 1, 1974.
Decided July 3, 1974.
 
 Luther C. West, Baltimore, Md. (West, Frame & Barnstein, Baltimore, Md., on brief), for appellant.
 Herbert Better Asst. U.S. Atty. (George Beall, U.S. Atty., on brief), for appellee.
 Before BUTZNER, RUSSELL and FIELD, Circuit Judges.
 DONAND RUSSELL, Circuit Judge:
 
 
 1
 In Koger v. Ball, 497 F.2d 702, decided May 10, 1974, we held that the right of a federal employee to sue on account of racial discrimination under 717 (42 U.S.C. 2000e-16(c)) of Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 (Pub.L. 92:261) extended not only to employees whose claims arose after the effective date of the Amendment (i.e., March 24, 1972) but also to employees whose claims were 'the subject of administrative proceedings at the time of enactment.'[1] In that case, it was clear the claim was pending undetermined before the Commission on March 24, 1972. In this case, on the other hand, the issue is whether the plaintiff's claim was pending on such date. The District Court held that it was not and we agree.
 
 
 2
 The factual context in which the claim of the plaintiff arose, as set forth in his complaint, is as follows: In 1955 the plaintiff was employed by the Coast Guard in a GS-4 classification. Having received no promotion during thirteen years of employment, he filed in 1968 a claim of racial discrimination in the denial of promotion under the administrative procedures set up for processing such claims by Executive Orders.[2] Such proceedings resulted in a decision by the Departmental Office of Civil Rights, Department of Transportation in November, 1970. That decision sustained the plaintiff's claim of discrimination, and, by way of remedy, ordered his immediate promotion to GS-5, with provision for early consideration for promotion therefrom. On promotion, however, the decision provided that the plaintiff was to be placed in 'a different department' from the Fiscal Department, where apparently he was then employed. The reason for this latter provision is not entirely clear but there is a comment in the report of the Hearing Examiner, included as an appendix to the complaint filed by the plaintiff, that seemingly clarifies the reason. The Hearing Examiner recommended 'That Mr. Clark have made absolutely clear to him his full responsibility for dealing with his co-workers and his supervisors in a peaceful, calm and courteous manner no matter what problem arises; * * *'. It might be a logical deduction from this that some difficulties had arisen between the plaintiff and other employees in the Fiscal Department. The plaintiff appealed to the United States Civil Service Commission's Board of Appeals and Review (BAR) from so much of this decision as provided for his transfer on promotion. BAR affirmed the decision of the Departmental Office on January 22, 1971, stating that the transfer of the plaintiff out of the Fiscal Department appeared appropriate 'since Mr. Clark believed that he was being harassed in the Fiscal Department.' Following this decision, the plaintiff was promoted to a GS-5 classification as a 'Safety Inspector' and entered on his duties as such on February 7, 1971. Claiming physical disability, he was retired from federal service on May 25, 1971.
 
 
 3
 In November, 1971 he requested the Civil Service Commission to reopen and reconsider his claim for relief. Presumably this request related merely to the transfer issue, since all other issues were decided in plaintiff's favor. This claim was filed under the terms of Civil Service Regulation 772-308, which authorized such filing on a showing of 'New and material evidence * * * that was not readily available when the previous decision was issued' or when 'the previous decision involves an erroneous interpretation of law or regulation or a misapplication of established policy * * *.'[3] That request was denied by the Commission and the plaintiff was advised of such denial by letter on December 7, 1971. The letter to the plaintiff closed with the statement that, 'Having received a final decision of the Civil Service Commission on your appeal, you have exhausted your administrative remedies within the Civil Service Commission * * *.'
 
 
 4
 In October, 1972 the plaintiff secured other counsel and, through such consel, petitioned the Civil Service Commission a second time to reopen and reconsider its decision 'insofar as ordering his promotion to GS-5 outside the Fiscal Department at the Coast Guard Yard at Curtis Bay.' The record does not indicate whether the request was predicated upon any 'new and material evidence * * * not readily available' previously or rested on a claim that the prior decision of the Commission involved 'an erroneous interpretation of law' but presumably was another request identical with his first request, that his promotion should not have been 'outside the Fiscal Department' but within the Fiscal Department. In any event, the request was denied by the Commission on January 9, 1973. The denial closed with the words, 'Any further appeal rights he may have are in the courts of the United States.' On February 7, 1973, within thirty days after the date of the letter denying the plaintiff's second request to reopen, the plaintiff began this action, asserting compliance with the conditions of 717.
 
 
 5
 The defendant moved to dismiss the action for failure to state a claim on which relief could be granted in that the cause of action arose before the enactment of 717 and in any event was not filed within thirty days after receipt of notice of final action taken by the Civil Service Commission. In ruling on such motion, the District Court held that a final decision on the plaintiff's claim was rendered on January 22, 1971 when the Commission affirmed the ruling of the Departmental Office. It followed, according to the District Court's opinion, that the claim of the plaintiff was not pending 'undetermined administratively' on March 24, 1972 and accordingly would not support an action under 717. On this ground, the District Court dismissed the action and this appeal followed.
 
 
 6
 It seems to be conceded by the plaintiff that 717 is retroactive only to the extent of covering claims of discrimination 'pending' administratively on its effective date. It is manifest from the agreed chronology of plaintiff's administrative proceedings, the plaintiff's claim was not 'being administratively considered' and was not 'the subject of administrative proceedings at the time of enactment' (i.e., March 24, 1972).[4] Even were the Act considered completely retroactive and the claim of the plaintiff deemed 'pending' on March 24, 1972, though, the plaintiff would still be precluded from asserting any rights under 717. That provision requires that any action be instituted within thirty days after a final decision by the Commission.[5] If 717 is to be given a full retroactive application and even if the plaintiff is thought to be excused from the thirty-day requirement because the Act was not effective when the Commission disposed of his claim, it would seem that he would have been obligated to file his action on his claim, finally determined as it had been before the effective date of the Act, within thirty days after that Act became effective. Any other rule would give to the plaintiff a right not enjoyed by claimants whose claims were decided by the Commission after the Act's enactment and would create an exception to the statutory thirty-day requirement, an exception never authorized or intended by Congress. It would go farther and make the Act open-ended so far as claims which had been finally disposed of administratively prior to March 24, 1972. The plaintiff is not entitled to any such preference. It follows that, under any such circumstances-- whether 717 be regarded as intended to be fully retroactive or not-- plaintiff lost any rights he may have had under 717 when he failed within thirty days after the enactment of the section to file his action. Cf., Stebbins v. Nationwide Mutual Insurance Company (4th Cir. 1972) 469 F.2d 268, 269-270.
 
 
 7
 The plaintiff contends, however, that, since by the regulations of the Civil Service Commission, any claimant has a right to request at any time a reopening on a showing of 'New and material evidence * * * that was not readily available when the previous decision was issued,' or when 'The previous decision involves an erroneous interpretation of law or regulation or a misapplication of established policy', his claim, even though it had been decided by the Commission's order of January 22, 1971 and even though a request to reopen that decision had been denied on December 7, 1971 was still pending on March 24, 1972, subject at any time to a renewed right to reopen even on the very same ground on which the former denial to reopen had been based, and that the plaintiff could by filing such a request to reopen and having same denied, acquire a right to file an action under 717 within thirty days after such denial. It is his theory that when he made his second request to reopen and that request was denied on January 9, 1973 he acquired under the Act the right within thirty days thereafter to file his action.
 
 
 8
 It is perhaps not inappropriate to remark parenthetically that it is somewhat inconsistent for the plaintiff to argue that the denial of his second request to reopen constituted 'final action' by the Commission while not recognizing that the earlier denial of his first request to reopen, occurring before the effective date of the Amendments, did not represent 'final action' by the Commission, a recognition which, if made, would mean that his claim was not 'pending' or 'being administratively considered' on March 24, 1972. But there is a more serious and relevant objection to this argument. Logically, such an argument, if accepted, would in effect deny finality to any decision of the Commission and an aggrieved claimant could revive at any time his claim, however stale, by the simple expedient of filing, as the plaintiff did in this case, a request to reopen. It would not matter that he may already have requested and been denied a reopening. Similarly, it would be of no moment that, after final action by the Commission either on his original claim or on his request to reopen, he had not filed suit within thirty days. That requirement could be frustrated merely by filing a new request to reopen, and when that was denied, suit could be filed. Such a result would thus mock the thirty-day limitation for the institution of suit, incorporated in the statute, and would do violence to the obvious legislative purpose evident in the statute. Moreover, this construction of the statute would invest it with unlimited retroactivity. Under this theory, any claim of discrimination, dismissed by the Commission, whether in 1970 or in 1960, could be brought within the remedy provided by 717 merely by filing after March 24, 1972 a request to reopen. When that request was denied, the employee, whose claim may have arisen in 1960, would have the right to sue under the statute. It seems safe to assume Congress intended no such result; and we must respect that obvious Congressional intent.
 
 
 9
 The plaintiff would, however, attach some significance to the fact that in its letter denying the second request to reopen, the Commission stated that the plaintiff had exhausted his administrative remedies and that any further rights on his part would have to be asserted 'in the courts of the United States.' This is substantially the same language with which the earlier denial of plaintiff's request to reopen concluded save that, since 717 was not then effective, no reference to the federal courts was included. The language, it would appear, is a part of the ritual employed customarily by the Commission in denying either a request to reopen or a claim. It would have been incorporated in any denial, whether it referred to the first or the tenth request to reopen. We cannot believe that a claim filed almost four years before the enactment of 717, administratively decided almost two years earlier, and where the claimant had already been denied the right to reopen on exactly the same ground, could be regarded as 'being administratively considered' or 'the subject of administrative proceedings' during all the period between March 24, 1972 and October, 1972, merely because, with a new attorney, the claimant renewed his request to reopen and, in its denial, the Commission used its accustomed phraseology in dismissing the request.
 
 
 10
 We would add that it would seem that even if it be assumed that a request to reopen, if approved, will revive a proceeding it clearly could not do so unless and until it is approved. Only had the request to reopen in this case been granted would the administrative proceedings have been given new life and provided a basis for a subsequent administrative decision, which could have been reviewed through an action filed under 717. The claim filed by this plaintiff and disposed of by the decision of the Commission in January, 1971 was never reopened or revived and was not 'pending' within the intendment of 717 on March 24, 1972 or at any subsequent time. It follows that plaintiff has no right of action under 717 on the basis of his claim filed in 1968.
 
 
 11
 Initially in this Court, the plaintiff argues, also, that he is entitled to recover under the due process clause of the fifth amendment. We decline, however, to adjudicate this constitutional claim. It could not have been presented to the district court because it exceeds $10,000. See 28 U.S.C. 1346(a)(2). His rights, if any he has, are cognizable only in the Court of Claims. 28 U.S.C. 1491. See Chambers v. United States (1971) 451 F.2d 1045, 196 Ct.Cl. 186.
 
 
 12
 Affirmed.
 
 
 
 [1]
 To the same effect is apparently Hackley v. Johnson (D.C.C.1973) 360 F.Supp. 1247, 1249, n. 1. See, also, Walker v. Kleindienst (D.C.C.1973) 357 F.Supp. 749, 752:
 '* * * Its (Section 717) applicability to pending cases is also supported by the fact that the 1972 Act is amendatory, affecting procedural remedies and should, therefore, apply to all cases pending at the time of its enactment unless some vested right would be impaired as a result.'
 There are cases that deny any retroactivity to the Act, even denying its application to pending cases. All the cases are listed in Henderson v. Defense Contract Admin. Serv. Reg., N.Y., (D.C.N.Y.1973) 370 F.Supp. 180, 182, n. 1.
 
 
 [2]
 See Executive Order No. 10722, 3 C.F.R. 1954-8 Comp., p. 384 (1957); Executive Order No. 10925, 3 C.F.R. 1959-1963 Comp., p. 448 (1961); Executive Order 11114, 3 C.F.R. 1959-1963 Comp., p. 774 (1963); Executive Order 11162, 3 C.F.R. 1964-1965 Comp., p. 215 (1964); Executive Order 11246, 3 C.F.R. 1964-1965 Comp., p. 339 (1965), now Executive Order 11478, 3 C.F.R. 1966-1970 Comp., p. 803 (1969); and the Regulations of the Civil Service Commission, 5 C.F.R. 4.2 and 713.202
 
 
 [3]
 Civil Service Regulation 772.308, 5 C.F.R
 
 
 [4]
 See Koger v. Ball, supra
 
 
 [5]
 Cf., Handy v. Gayler (D.C.Md.1973) 364 F.Supp. 676, 678; Henderson v. Defense Contract Admin. Serv. Reg., N.Y., supra (370 F.Supp. at p. 184), and Johnson v. United States Postal Service (D.C.Fla.1973) 364 F.Supp. 37, 39