656 F.2d 103
 Blue Sky L. Rep. P 71,655, Fed. Sec. L. Rep. P 98,276
Robert P. JONES, Plaintiff-Appellee,
v.
J. Merrell MILES, D. Herschell Miles, Jewel Miles, Franklin
Earl Miles, Larry W. Miles and H. Frank Tanner,
Defendants-Appellants.
 No. 80-7544.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit B
 Aug. 31, 1981.
 Dickey, Whelchel, Miles & Brown, Terry L. Readdick, Brunswick, Ga., for defendants-appellants.
 Jeffrey L. Sakas, Atlanta, Ga., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Georgia.
 Before KRAVITCH and HENDERSON, Circuit Judges, and DANIEL H. THOMAS*, District Judge.
 HENDERSON, Circuit Judge:
 
 
 1
 The plaintiff-appellee, Robert P. Jones, filed this action in the district court charging the defendants-appellants, J. Merrell Miles, Franklin Earl Miles and H. Frank Tanner, and others, with state and federal securities violations and common law fraud. He essentially complains that the appellants knowingly made false representations and omissions to him concerning the financial condition of a company owned and controlled by the Miles in order to induce him to enter into a merger with his business. The five-count petition is premised on § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C.A. § 78j (1971)), §§ 12(2) and 17(a) of the Securities Act of 1933 (15 U.S.C.A. §§ 77l, 77q (1971)), §§ 3, 5, and 12 of the Georgia Securities Act of 1973 (Ga.Code Ann. §§ 97-103, 105, 112 and 114 (1973)), fraud under Ga.Code Ann. § 105-301 (1968), and exemplary damages pursuant to Ga.Code Ann. § 105-2002 (1968).
 
 
 2
 Negotiations to combine the two companies began in the summer of 1976, when Jones, doing business as American Machine Products Company, Inc. (American), was engaged in machine work for the appellant J. Merrell Miles. Eventually, a decision was reached to merge American with Burke County Industrial (Burke), the firm owned by the Miles. Prior to the actual merger of the companies on or about October 16, 1976, each party was permitted to examine the financial records and facilities of the other's business. Jones also consulted the appellant H. Frank Tanner, a certified public accountant to whom Jones was introduced by the Miles, for financial information comparing the value, assets and liabilities of the two firms.
 
 
 3
 During the trial, Jones identified three specific misrepresentations purportedly made to induce him to enter into the agreement. He claimed that 1) the value of the assets in the appellants' company was not equal to or more than the value of the assets of his own enterprise as had been represented to him; 2) the appellants did not provide sufficient capital to operate the new business as originally promised; and 3) the appellants misrepresented to him that they had or could obtain the business of the Georgia Power Company. The evidence indicates that Jones became aware of the supposed inaccuracies of these statements as early as January, 1977. In defense, the Miles maintain that the misrepresentations, if any, were not actionable, because no specific promises or claims were made.
 
 
 4
 Before these alleged falsities came to light, though, Jones' company purchased the assets and liabilities of Burke. Jones retained 42% of the stock in the merged corporation and the Miles received the remaining 58% of the equity interest. Later, when the operational difficulties and the economic inequalities of the original agreement became manifest, the parties reached a new understanding. On February 27, 1977, they agreed to cancel all stock previously issued and to reissue the shares, 50% to Jones and 50% to the Miles. When the business continued to fail, the parties reached a third agreement on June 20, 1977, to sell the assets of the corporation and apply the proceeds to its business debts.
 
 
 5
 At the conclusion of the trial, the jury returned a general verdict of $60,000.00 actual damages and $65,000.00 punitive damages in favor of Jones and against the appellants. The appellants made no motion for directed verdict or for judgment notwithstanding the verdict. The three appellants did file a motion for a new trial, which was denied by the district court. They appeal from the judgment entered by the district court as well as the denial of the motion for new trial, and ask that all or part of the verdict be set aside and that a new trial be granted on grounds of insufficient evidence of actionable misrepresentation,[1] waiver of punitive damages under the common law count because of the conduct of the appellee, and failure of the trial court to instruct the jury on waiver.
 
 
 6
 Because only a general verdict was returned, our review of the judgment and the denial of a new trial is hampered.[2] In this posture, it is impossible to tell which theory of liability was adopted by the jury and the sufficiency of the evidence in support thereof.[3] A nonspecific, general verdict is acceptable, even in a case alleging multiple theories of liability, if each of the several theories is sustained by the evidence and legally sound.[4] Such a determination cannot be made here, though, because an error objected to by the appellants at the trial and asserted in their motion for new trial compels a remand of the entire case to the district court.
 
 
 7
 This deficiency to which we refer centers on the charge to the jury with respect to common law fraud. The district judge declined to instruct the jury on waiver of estoppel, because the waiver defense is not available in a case involving only violations of Georgia and/or federal securities laws. Gilbert v. Meason, 137 Ga.App. 1, 222 S.E.2d 835 (1975); 15 U.S.C.A. §§ 77n, 78cc(a) (1970). The defendants, who were charged with securities laws offenses and fraud, submitted a request to charge on waiver which failed to limit the estoppel defense to the common law fraud claim.[5] The judge correctly decided against the sweeping, overbroad instruction, but he should have included in his charge a corrected, qualified statement of the law on waiver of fraud.[6] The estoppel defense became an issue when evidence was introduced tending to support such a contention.[7] Moreover, the $65,000.00 punitive damages award could only be assessed pursuant to the fraud count,[8] so the jury verdict must have been based on the common law fraud charge, at least in part. Since the instruction as given was not complete enough to permit the jury to make an adequate finding on the fraud issue, we conclude that an acceptable general verdict can not rest on the sufficiency of that count.[9]
 
 
 8
 Had special verdicts been submitted to the jury, this error could have been localized thereby permitting the valid portions of the original verdict to be salvaged. But this single fault completely destroys the general verdict, because such a verdict is "an inseparable and inscrutable unit". 5A Moore's Federal Practice P 49.02 (2d Ed. 1980) citing Sunderland, Verdicts, General and Special, 29 Yale L.J. 253, 259 (1929). Thus, we are compelled to vacate the judgment, set aside the general verdict and remand for new trial consistent with this opinion. See Mueller v. Hubbard Milling Co., 573 F.2d 1029 (8th Cir.) cert. denied, 439 U.S. 865, 99 S.Ct. 189, 58 L.Ed.2d 174 (1978).
 
 
 9
 VACATED AND REMANDED.
 
 
 
 *
 District Judge of the Southern District of Alabama, sitting by designation
 
 
 [1]
 Our appellate authority does not extend to a review of the verdict for sufficiency of the evidence, since there was no unwaived motion for a directed verdict. See Rawls v. Daughters of Charity of St. Vincent De Paul, Inc., 491 F.2d 141 (5th Cir.) cert. denied, 419 U.S. 1032, 95 S.Ct. 513, 42 L.Ed.2d 307 (1974); Porter v. Eckert, 465 F.2d 1307 (5th Cir. 1972) (cases cited in 5A Moore's Federal Practice P 50.05(1) (2d Ed. 1980)). In this case, we can evaluate the correctness of the denial of a new trial on grounds of lack of evidence, however. In considering sufficiency of the evidence on review of a motion for new trial, the inquiry is whether the evidence is capable of supporting the jury verdict as a matter of law, not whether the case is strong enough to go to the jury. Accordingly, a motion for a directed verdict is not prerequisite to a motion for a new trial or a review of the motion's denial. Urti v. Transp. Commercial Corp., 479 F.2d 766, 768-69 (5th Cir. 1973)
 
 
 [2]
 The appellants make no mention in their motion for a new trial or on appeal of the trial judge's utilization of a general verdict. Indeed, they have waived their right to raise this point on appeal. A party who makes no request for a special verdict cannot assert the issue for the first time on appeal. Great Coastal Express, Inc. v. Int'l Bhd. of Teamsters, 511 F.2d 839, 845 (4th Cir. 1975) cert. denied, 425 U.S. 975, 96 S.Ct. 2176, 48 L.Ed.2d 799 (1976); Toth v. Corning Glass Works, 411 F.2d 912, 914 n. 2 (6th Cir. 1969)
 
 
 [3]
 General verdicts are often criticized for these very reasons. On the other hand, special verdicts are of great benefit on a review of jury findings. Nardone v. Reynolds, 538 F.2d 1131, 1137 n. 16 (5th Cir. 1976); Jamison Co. v. Westvaco Corp., 526 F.2d 922, 934-35 (5th Cir. 1976); Kestenbaum v. Falstaff Brewing Corp., 514 F.2d 690, 693-94 (5th Cir. 1975) cert. denied, 424 U.S. 943, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1976); Simmons v. King, 478 F.2d 857, 862 n. 12 (5th Cir. 1973); Burns v. Anchor-Wate Co., 469 F.2d 730, 734 n. 8 (5th Cir. 1972). In re Double D Dredging Co., 467 F.2d 468, 469 (5th Cir. 1972); Bailey v. Kawasaki-Kisen, K.K., 455 F.2d 392, 394 (5th Cir. 1972). See generally Brown, Federal Special Verdicts: The Doubt Eliminator, 44 F.R.D. 338 (1967)
 
 
 [4]
 The discretion to utilize a special verdict rests with the trial judge. Edwards v. Sears, Roebuck & Co., 512 F.2d 276, 294 (5th Cir. 1975); Borel v. Fibreboard Paper Prod. Corp., 493 F.2d 1076, 1100 (5th Cir. 1973) cert. denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974); Anderson v. Eagle Motor Lines, Inc., 423 F.2d 81, 85 (5th Cir. 1970). If the judge accepts a general verdict in a case containing multiple issues, the verdict is immune from attack only as long as the evidence under each count is sufficient to authorize the result. Smith v. Southern Airways, Inc., 556 F.2d 1347 (5th Cir. 1977)
 
 
 [5]
 The request to charge in relevant part said:
 You will decide from the evidence and the law given you in charge whether or not the plaintiff is estopped from asserting his claim against these defendants; whether or not the plaintiff waived or released the defendants of any claim. The right to claim an estoppel by waiver is based on the loss or surrender of an equivalent right which would still exist but for some act of the opposite party which has altered the position of him who insists upon the waiver.
 
 
 [6]
 When a requested instruction is so grossly inaccurate as to completely miss the mark, the court is under no duty to give its own statement of the law or correct the erroneous instruction. Bissett v. Ply-Gem Indus., Inc., 533 F.2d 142, 145 (5th Cir. 1976). On the other hand, if the request apprises the court of a point upon which the jury may need instruction, the court's failure to so charge may not be excused by technical defects in the request. Dahlgren v. United States, 553 F.2d 434, 440 (5th Cir. 1977); Ullman v. Overnite Transp. Co., 508 F.2d 676, 677 (5th Cir. 1975). The judge generally has a duty to frame a requested instruction properly and to submit it to the jury where the legal principle is necessary to the proper determination of the case. Chavez v. Sears, Roebuck & Co., 525 F.2d 827, 830 (10th Cir. 1975)
 
 
 [7]
 The defense of estoppel must be set forth affirmatively in pleading to a preceding pleading. Fed.R.Civ.P. 8(c) (1966). Consequently, an affirmative defense that is not asserted in a responsive pleading is generally deemed waived. Funding Sys. Leasing Corp. v. Pugh, 530 F.2d 91, 95 (5th Cir. 1976); United States v. Indus. Crane & Mfg. Corp., 492 F.2d 772, 774 (5th Cir. 1974). Even so, in practice an affirmative defense is not waived to the extent that the party who should have pled the defense introduces evidence in support thereof without objection by the adverse party or that the opposing party's own evidence discloses the defense, necessarily indicating his express consent. Fed. Sav. & Loan Ins. Corp. v. Hogan, 476 F.2d 1182, 1187 (7th Cir. 1973); Radio Corp. of America v. Radio Station KYFM, Inc., 424 F.2d 14, 17 (10th Cir. 1970). See 2A Moore's Federal Practice P 8.27(3) (2d Ed. 1981). Neglect to affirmatively plead the defense is simply noncompliance with a technicality and does not constitute a waiver where there is no claim of surprise. Tillman v. Nat'l City Bank of New York, 118 F.2d 631, 635 (2d Cir. 1941)
 In this case, there was evidence, admitted without objection in the trial court, that Jones entered into a subsequent amended stock agreement with the appellants on February 27, 1977, and that prior to that time Jones knew that facts material to the transaction were not as he had originally believed them to be. (Transcript at 52-55, 96-104). A person who voluntarily enters into a later agreement after full knowledge of all material facts waives his right to a cause of action for common law fraud. Atlanta Car Wash v. Schwab, 215 Ga. 319, 320-21, 110 S.E.2d 341 (1959); Gem City Motors, Inc. v. Minton, 109 Ga.App. 842, 848-49, 137 S.E.2d 522 (1964). Here the possibility of waiver by estoppel under Georgia law was revealed by evidence to which no objection was interposed and which was continually before the jury with the apparent consent of the parties. Thus, the lack of an affirmative pleading conforming to the evidence is not fatal, because the evidence acts as an amendment to the defenses already enumerated.
 
 
 [8]
 "Actual damages" as provided for in § 28(a) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78bb(a) (1970), has been interpreted to mean some form of economic loss and does not include punitive damages. Ryan v. Foster & Marshall, Inc., 556 F.2d 460, 464 (9th Cir. 1977); Straub v. Vaisman & Co., 540 F.2d 591, 599 (3d Cir. 1976); Flaks v. Koegel, 504 F.2d 702, 706 (2d Cir. 1974); deHaas v. Empire Petroleum Co., 435 F.2d 1223, 1229-32 (10th Cir. 1970). This circuit recently joined others in holding that exemplary damages are not available in Rule 10b-5 actions, but may be recovered in properly pleaded pendent state claims if permitted under state law. Stowell v. Ted S. Finkel Inv. Serv., Inc., 489 F.Supp. 1209, 1215-16 (S.D.Fla.1980). See also Miley v. Oppenheimer & Co., 637 F.2d 318, 329-30 (5th Cir. 1981). Nor are punitive damages recoverable for violations of § 12(2) of the 1934 Act, 15 U.S.C.A. § 77l (1970), the other federal statute involved in this case. Hill York Corp. v. Am. Int'l Franchises, Inc., 448 F.2d 680, 697 (5th Cir. 1971)
 Damages sought pursuant to Ga.Code Ann. § 97-114(a), authorizing a civil action for illegal sale of securities, are limited to the consideration paid for the security, or the excess of the purchase price over fair value if the security has been sold, plus interest. However, § 97-114(e) preserves all of the plaintiff's other statutory or common law rights for acts involving the sale of a security. Hence, punitive damages might be awarded in connection with a state securities violation, but only if in accord with the requirements of Ga.Code Ann. § 105-301 (1968), the codification and source of the Georgia common law fraud cause of action.
 
 
 [9]
 Liability for fraud involves questions of law, as well as fact, and is properly decided only if the jury is instructed as to the applicable legal standards. Jackson v. King, 223 F.2d 714, 718 (5th Cir. 1955). Waiver by estoppel of fraud, a relevant principle in this case, should have been explained to the jury. This problem apparently troubled the trial judge for he acknowledged that the defendants' objection to the failure to charge on this defense may have had merit. Under these circumstances, the more cautious approach would have been to include an instruction on estoppel by waiver as it related to the fraud count. Because of this omission, it is impossible to conclude that the jury found sufficient evidence of liability on that claim
 A review of the evidence in support of the other theories of liability would bring us no closer to resolution of the controversy in its present posture. If we were to determine that the facts did enable a jury to find a statutory securities law violation, we would confront yet other difficulty, namely the inconsistency of the verdict and the damages awarded as a matter of law. We would have to assume that the jury found a violation under either the federal or state securities laws only (as to which the charge was adequate), but then imposed damages recoverable only for common law fraud.