**Robert PAETZ, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 85–7346.

United States Court of Appeals, Eleventh Circuit.

Aug. 11, 1986.

Robert Sellers Smith, Smith, Huckaby & Graves, P.A., Huntsville, Ala., for plaintiff-appellant.

**1534**

Frank W. Donaldson, U.S. Atty., Herbert J. Lewis, III, Asst. U.S. Atty., Birmingham, Ala., for defendant-appellee.

Before JOHNSON and HATCHETT, Circuit Judges, and ALAIMO *, Chief District Judge.

HATCHETT, Circuit Judge:

The principal issue presented in this appeal is whether a civil service employee had an age discrimination claim pending on May 1, 1974, the effective date of the amendment extending the Age Discrimination in Employment Act to federal employees. Finding that the claim was pending, we reverse.

## I. Facts

The appellant, Robert Paetz, is a rocket expert who came from Germany to the United States in 1945 to work with Dr. Wernher Von Braun. After serving under a "Special Contract for Employment of German Nationals with the War Department in the United States," Paetz became a citizen and a federal employee in the United States Civil Service. In 1971, Paetz was subjected to a reduction-in-force (RIF). The government downgraded him from the position of AST Launch Vehicle Project Management, GS–15, to the position of AST Technical Management, GS–12. On July 12, 1972, Paetz's GS–12 position was terminated, and he was separated from the Civil Service. At the time of separation, Paetz was 63 years old and had accumulated 27 years of government service.

Paetz appealed both RIF actions to the Atlanta Regional Office, U.S. Civil Service Commission (CSC).[1] The Commission denied both appeals. Paetz then appealed these denials to the Board of Appeals and Review (BAR) of the CSC. On April 23, 1973, the BAR issued its final adverse decision on the second appeal. On February 18, 1974, Paetz filed a petition with the CSC to reopen and reconsider the decision of the BAR regarding the 1971 RIF. On June 11, 1974, the CSC denied the petition.

On February 12, 1975, Paetz filed an action in the United States District Court for the Northern District of Alabama seeking judicial review of the 1971 and 1972 RIF decisions. On February 1, 1977, the district court denied the government's motion for summary judgment and remanded the case to the CSC for a new hearing. On May 20, 1977, during a preconference hearing in the Atlanta Regional Office, the CSC treated both of Paetz's appeals as rescinded and agreed to incorporate the record of the 1971 and 1972 appeals in the new proceeding. This action is important to the disposition of this appeal.

On July 22, 1977, the CSC notified Paetz that the order of the Atlanta Regional Office of December 12, 1972, was rescinded and the case remanded. On April 6, 1978, the Atlanta office issued decisions adverse to Paetz on both RIFs.

On July 19, 1979, the MSPB rescinded both April 6, 1978, decisions and remanded the cases to the Atlanta office. On June 1, 1981, the Atlanta office decided the cases against Paetz. After an appeal by Paetz, in an order dated March 1, 1984, the MSPB modified and affirmed the 1981 decision of the Atlanta field office. In the Order and Opinion, the MSPB advised Paetz of his right to have the case further adjudicated.[2]

The appellant may file a civil action in an appropriate U.S. District Court from the Board's final decision involving issues of prohibited discrimination. If such a civil action raises issues of discrimination based on race, color, sex, national origin, religion, or handicap, it must be received by the court no later than 30 days after the Board's decision or the issue of discrimination becomes final.

---

* Honorable Anthony A. Alaimo, Chief U.S. District Judge for the Southern District of Georgia, sitting by designation.

1. Subsequently, that office became the Atlanta Field Office, Federal Employee Appeals Authority, and is now the Atlanta Field Office, Merit Systems Protection Board (MSPB).

2. The order stated:

In Paetz's original appeal to the CSC, he raised issues relating to the operation of a reduction-in-force, i.e., the definition of competitive levels and bumping rights. Paetz complained that the method of defining competitive levels failed to provide protection to senior employees. In his February 18, 1974, petition for the CSC to reopen and reconsider the BAR's decision on the 1971 RIF, Paetz complained about three matters. He complained about (1) being denied a veteran's preference, (2) the use of narrow competitive levels, and (3) the use of a subjective qualification test resulting in discrimination against "senior employees causing them to forfeit their bumping rights." In his February 12, 1975, district court lawsuit seeking judicial review of the RIF decisions, Paetz alleged that the government made no effort to establish reasonable competitive levels or to protect his bumping rights "solely because of his age and years of service." The chronology of Paetz's case is set out in the margin.[3]

## II. Action in District Court

In Paetz's complaint in district court, he challenged the 1971 and 1972 RIF actions. The complaint alleges (1) that the administrative process was procedurally unfair because of delay in adjudicating the claim, (2) that Paetz was downgraded and terminated because of improper selection procedures, and (3) that Paetz was downgraded and terminated unlawfully because of his age and length of service, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 (1983).

The district court granted summary judgment for the United States. The court listed three grounds. First, Paetz never filed an administrative claim based on age discrimination. Second, if Paetz raised age discrimination in his RIF appeals, he did not have an administrative claim pending on the effective date of the 1974 amendments which extended the ADEA's coverage to federal employees. 29 U.S.C. § 633a (1983). Third, if Paetz claimed age discrimination in his RIF appeals and if claims were pending on the effective date of the 1974 amendments, he failed to file a lawsuit within the time allowed by the applicable statute of limitations.

Paetz filed a Motion for New Trial or in the Alternative to Alter or Amend Judgment and Transfer Cause to the United States Court of Appeals for the Federal Circuit. On May 16, 1985, the district court denied the motion.

## III. Issues

We must decide two issues: (1) whether the action is time-barred and (2) whether

**3.** 1. August 16, 1971—notification of downgrading.
2. July 12, 1972—separation from Civil Service.
3. October 15, 1971—appeal of 1971 RIF action.
4. May 3, 1972—denial of appeal of 1971 RIF action.
5. December 7, 1972—BAR affirms decision.
6. June 30, 1972—appeal of 1972 RIF action.
7. December 12, 1972—denial of appeal of 1972 RIF action.
8. December 26, 1972—appeal to the BAR.
9. April 23, 1973—denial of appeal.
10. February 18, 1974—petition with Civil Service Commission to reopen and reconsider decision of BAR in connection with 1971 RIF.
11. June 11, 1974—petition to reopen and reconsider denied.
12. February 12, 1975—action filed in U.S. District Court seeking judicial review of both RIF's.
13. February 1, 1977—district court order denying government's motion for summary judgment and remanding case to the U.S. Civil Service Commission for de novo hearing.

14. May 13, 1977—prehearing conference in which parties agree to incorporate record of 1971 and 1972 appeals in new proceeding; age discrimination identified as issue pertinent to both RIF's.
15. July 22, 1977—CSC rescinds December 12, 1972, order denying appeal of 1972 RIF action.
16. September 28-29, 1977—hearing on 1971 RIF case.
17. September 30, 1977—hearing on 1972 RIF case.
18. April 6, 1978—decisions adverse to Paetz issued by Atlanta Field Office.
19. July 19, 1979—MSPB rescinds April 6, 1978, decisions and remands case to Atlanta Field Office.
20. June 1, 1981—MSPB decides both cases adversely to Paetz.
21. March 1, 1984—modified decision entered and made effective April 5, 1984.
22. April 4, 1984—Paetz files civil action in United States District Court.

the district court has subject matter jurisdiction of Paetz's claim of age discrimination.

## IV. Discussion

### A. Statute of Limitations

■ Paetz filed this case within the statute of limitations period following the March 1, 1984, final decision. Limitations on claims against the United States do not commence to run until completion of the administrative process. *Zidell Explorations, Inc. v. United States*, 427 F.2d 735, 192 Ct.Cl. 331 (1970).

The government, however, contends that Paetz's lawsuit is time-barred because he filed the 1975 district court action late. The government seeks to set the commencement date for the statute of limitations as June 11, 1974, the date of the Civil Service Commission's final decision on Paetz's petition to reopen. The government argues that the thirty-day limit of 42 U.S.C. § 2000e–16(c) should be applied to age claims where the claimant has pursued administrative proceedings and obtained a final decision. *See Lehman v. Nakshian*, 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981) (holding that Congress patterned certain ADEA provisions after Title VII of Civil Rights Act of 1964).

■ We need not determine the date on which the applicable statute of limitations began to run. A statute of limitations defense is an affirmative defense. *See* Rule 8(c), Fed.R.Civ.P. Failure to assert such a defense in a defendant's pleadings is a waiver. *See American National Bank v. FDIC*, 710 F.2d 1528 (11th Cir.1983); *Jones v. Miles*, 656 F.2d 103, 107 n. 7 (5th Cir. Unit B 1981). The government did not plead a statute of limitations defense in 1975; the defense is waived.

### B. Subject Matter Jurisdiction

■ Paetz contends that district court jurisdiction is based on 5 U.S.C. § 7703(b)(2) (appeal from a final order of

the MSPB in age discrimination cases), and on ADEA 29 U.S.C. § 633a(c).

Without addressing whether 5 U.S.C. § 7703(b)(2) is a grant of jurisdiction, the government contends that the district court's jurisdiction only arises under ADEA 29 U.S.C. § 633a(c). The government argues that the district court lacks jurisdiction because Paetz did not have an age discrimination claim pending on May 1, 1974, the effective date of the ADEA amendments. The government cites *Bunch v. United States*, 548 F.2d 336 (9th Cir.1977) as support for this proposition. The government contends that because no allegation of discrimination is made, Paetz's claim is exclusively within the jurisdiction of the United States Court of Appeals for the Federal Circuit. *See* 28 U.S.C. § 1295 and 5 U.S.C. § 7703(b)(1).

We agree with that portion of the government's argument which states that Paetz's petition to reopen a final decision did not destroy the finality of the CSC's decision and transform it into a "pending" claim. The Administrative Procedures Act deems administrative action final for purposes of judicial review regardless of whether a petition for reconsideration is presented to the agency. *See* 5 U.S.C. § 704; *see also Clark v. Goode*, 499 F.2d 130 (4th Cir.1975) (racial discrimination; petition to reopen filed subsequent to a final decision of the CSC does not convert a finally adjudicated administrative claim into a "pending" claim). Paetz's claim was not reopened or revived by the CSC before May 1, 1974, and was not pending within the meaning of *Clark* on May 1, 1974. Paetz's position, therefore, is similar to the plaintiff's position in *Macellaro v. Goldman*, 643 F.2d 813 (D.C.Cir.1980) (case closed before 1974 amendments not revived by post-1974 allegation of age discrimination).

Unlike the plaintiffs in *Clark* and *Macellaro*, however, Paetz received a final decision on the merits of his age discrimination claim through administrative processes on March 1, 1984, effective April 5, 1984.[4]

---

**4.** In contrast, Clark received a denial of a request to reopen; Macellaro sought to renew a

Paetz cites 5 U.S.C. § 7703(b)(2) (procedure for an appeal from a final order of the MSPB in age discrimination cases) as authority for the filing of this suit. We agree that section 7703(b)(2), read with 5 U.S.C. § 7702(a)(3) supports the district court's jurisdiction.[5]

*Bunch,* which the government relies on, establishes that the pendency of a case either administratively or in the district court on May 1, 1974, is sufficient for ADEA jurisdiction to exist. The *Bunch* court reasoned that the policies underlying Congress's extension of ADEA to federal civil service employees allow a generous reading of the jurisdictional requirement, based on a weighing of the relative injustice to the parties. The *Bunch* court concludes that injustice will result if an employee who had a pending case on May 1, 1974, "cannot vindicate the longstanding policy against age discrimination in the federal competitive service." *Bunch,* 548 F.2d at 339. *See also* 548 F.2d at 336 n. 4 (describing legislative purpose as seeking mechanism to vindicate existing public policy against discrimination in civil service on the basis of age); *Womack v. Lynn,* 504 F.2d 267 (D.C.Cir.1974) (describing rationale for retroactivity of employment discrimination claims in civil service as vindication through new remedy of long-standing right to be free of discrimination).

*Bunch* does not, as the government suggests, articulate a jurisdictional standard that excludes claims; it provides a framework for determining whether subject matter jurisdiction exists. The governing factor is congressional intent, determined by considerations of substantial justice. We must therefore consider whether the policy of Congress in extending ADEA to federal civil servants would be served by allowing Paetz to appeal the final order of the MSPB, and whether injustice would be manifest in allowing him to proceed. *See Bunch,* 548 F.2d at 339.

The equities favor Paetz. He filed his claim in 1971, without counsel, expecting a fair reading of his claim. He recited his years in service and described the special protections that exist in some civil services for senior civil servants. He discussed the lack of marketability of a 62-year-old engineer: "To find industrial employment now, at the age of 62, is practically impossible, it being well known that industry basically does not hire above age 45." When he petitioned for reopening on February 18, 1974, he complained of the use of a subjective qualification test resulting in discrimination against "senior employees."

Because of the procedural steps taken, Paetz's discrimination claim relates back to his original filing. At the prehearing conference on May 20, 1977, the government agreed to incorporate the record of the 1971 and 1972 appeals in the new proceeding. This case has been continuously active since its original filing. We conclude that the relation back in the hearings of the age discrimination claim to the original filings vests the district court with subject matter jurisdiction. Paetz's ADEA claim falls within the terms of *Bunch* as a case that was administratively pending on May 1, 1974.

We also agree with Paetz that the United States is too late in asserting its defense of lack of subject matter jurisdiction as to the prior lawsuit: we are now dealing with a new administrative record and a lawsuit resulting from the new record. The government's jurisdictional theory, which

claim terminated by an unappealed final order issued before 1974 by alleging in district court a continuing pattern of discrimination.

**5.** As discussed below, our decision rests on construing Congress's intent in extending ADEA to the federal service. We need not decide whether sections 7702 and 7703 are an independent grant of jurisdiction, although we note that the Supreme Court has assumed that statutory language providing for judicial review of an administrative decision rendered after a hearing does create jurisdiction. *See Califano v. Sanders,* 430 U.S. 99, 108, 97 S.Ct. 980, 985, 51 L.Ed.2d 192, 201 (1977) (construing 42 U.S.C. § 405(b)). *See Green v. Heckler,* 742 F.2d 237, 239 (5th Cir. 1984) (assuming that final decision after a hearing is basis for judicial review).

Section 7702 provides that "[a]ny decision of the Board under paragraph (1) of this subsection shall be a judicially reviewable action ...."

stops with the events of 1974, collapses under the weight of subsequent case history. We construe congressional intent to determine whether subject matter jurisdiction exists. Because fairness is a factor in determining the existence of ADEA jurisdiction under *Bunch,* the government's surprise in this litigation helps resolve the jurisdictional question.[6] We must take into account the unfairness that would be manifest in denying Paetz access to court pursuant to the congressional enactment prohibiting age discrimination in the federal service.

Because the incorporation of the 1971 and 1972 records relates the ADEA suit back, substantial justice and common sense are served by recognizing that the congressional expansion of the civil servant's remedy for age discrimination encompasses this case. The provision in 5 U.S.C. § 7702(a)(3) for judicial review provides further evidence that Congress intended to create subject matter jurisdiction broad enough to cover a case such as this one.

We hold that the district court erred in dismissing Paetz's suit for lack of subject matter jurisdiction. In light of this disposition, we need not reach Paetz's argument that the court abused its discretion when it failed to transfer the case to the federal circuit. If for any reason the discrimination claims are defeated, we assume that the district court will again consider whether transfer is proper.

We reverse and remand for further proceedings.

REVERSED and REMANDED.

JOHNSON, Circuit Judge, dissenting:

The majority, in its rush to don the robe of the chancellor in order to do equity in this case, ignores a fundamental proposition that underlies the system of both law and equity: a court may not legitimately decide a case unless it has subject matter jurisdiction. There is no question here but that the federal courts do not now have and never, in the course of this long controversy, had subject matter jurisdiction. For that reason I dissent from the majority's decision on the merits. Because I find that Paetz's age claim is not viable, I believe the proper disposition of this case requires only disposing of the pendent claims Paetz advances—which the majority pretermits.

## I.

While I agree for the most part with the majority's statement of the case and its procedural history, I believe that the majority has overlooked several important matters that affect the outcome of the jurisdictional question.

First, the claim of age discrimination was not alleged in either of the original challenges to the reduction-in-force [hereinafter "RIF"] decisions made in 1971 and 1972. This is hardly surprising, since these claims were considered and rejected prior to the extension of the Age Discrimination in Employment Act [hereinafter "ADEA"], 29 U.S.C.A. § 621 *et seq.* (1985), to the federal workforce. It was only in February of 1974, just prior to the statutory modifications, that Paetz first raised the allegation of age discrimination in a petition filed with the Civil Service Commission [hereinafter "CSC"] seeking to reopen and reconsider the 1971 downgrade decision. That petition was denied.

Second, in February of 1975 Paetz filed suit in the United States District Court for the Northern District of Alabama seeking review of both the 1971 and 1972 RIF actions. His complaint alleged unreasonable delay in making an administrative determination, utilization of an unlawful select out procedure for RIFs, and challenged NASA's action as taken "solely because of his age and years of service." The govern-

---

**6.** It likewise stretches common sense to argue that the 1977 remand was for naught, and the long, hotly contested administrative proceedings, in which the government participated without objection, should be considered as never occurring. It is the 1984 order on the merits of Paetz's claim that denied him relief. What the government could have argued or, more correctly, should have argued in the now distant 70's cannot "sandbag" this civil servant who has been continuously pursuing his claims since 1971.

ment responded with a motion for summary judgment arguing, *inter alia,* that the court lacked subject matter jurisdiction on two counts: because at the time the cause of action accrued the government had not waived its sovereign immunity with regard to age-based discrimination; and because Paetz had failed to raise his age claim during the administrative appeal. R1–Tab 11–Exh. 3.

In February 1977, the trial judge to whom the case was then assigned denied the motion for summary judgment and remanded the matter to the CSC for a *de novo* hearing. R1–Tab 11–Exh. 1. That order did not, however, reach or decide the question of subject matter jurisdiction. In response to this direct court order, the CSC treated its earlier opinion as being rescinded and considered the question of age discrimination along with the other claims originally advanced in 1971 and 1972.

Following the conclusion of administrative review, with the issuance of the final decision of the Merit Systems Protection Board, this suit was sent back to the district court and transferred to the docket of Judge E.B. Haltom. The plaintiff there argued three counts: failure to adjudicate his claim within a reasonable time; downgrade and termination by means of an unlawful select out personnel policy; and downgrade and termination based on age-based discrimination. The government answered and subsequently filed a motion to dismiss, arguing; 1) that the court lacked subject matter jurisdiction over the age discrimination claim because it was not pending on the effective date of the amendments to the ADEA; 2) that if there was

jurisdiction it was only on the pendent claims and only in the United States Court of Appeals for the Federal Circuit; [1] and 3) statute of limitations.

The trial court elected to treat the motion to dismiss as a motion for summary judgment and took it under advisement after full briefs, affidavits, and oral argument. The trial court granted the motion for summary judgment in April 1984. Its order found that Paetz never filed an administrative claim of age discrimination, that even if he did, he had no claim pending on the effective date of the ADEA's enactment, and that even if the claim was pending the claim was time barred. In May of 1985 Paetz filed a motion for a new trial or to amend the judgment and to transfer the pendent claims to the Federal Circuit. That motion was denied. This appeal followed.

## II.

### A.

#### 1.

In 1971 and 1972, when appellant was subject to the adverse personnel actions, Congress had not yet amended the ADEA to make it applicable to the federal workforce. As the majority holds, the amendments apply both prospectively and to all cases pending either administratively or before the courts on May 1, 1974. *Ante* at 1537; *Bunch v. United States,* 548 F.2d 336, 338–40 (9th Cir.1977). Thus Paetz may recover only if he can demonstrate that his claim was pending on May 1, 1974. If such claim was not pending, then he is without the scope of the amended statute

---

1. In 1982 Congress passed the Federal Courts Improvement Act, 28 U.S.C.A. § 1295, which amended Title V of the U.S. Code dealing with court review of agency personnel actions. Under the current law, the garden variety appeal from a personnel decision of the Merit Systems Protection Board will lie only in the Court of Appeals for the Federal Circuit. 5 U.S.C.A. § 7703(b)(1). But when basic claims of adverse personnel decisions are blended with allegations of discrimination under the ADEA, this constitutes a "mixed case" and the Federal Circuit has no jurisdiction. *Id.* at § 7703(b)(2); *Williams v.*

*Dep't of the Army,* 715 F.2d 1485, 1491 (Fed.Cir. 1983) (*en banc*). Such actions must be brought in the relevant district court and appealed to the circuit court above.

Appellant argues first that this case has a live discrimination claim, meaning that the court below was properly seized of jurisdiction, and alternatively that if the discrimination claim is not viable then this case should be transferred to the Federal Circuit. Thus the existence of subject matter jurisdiction by this Court turns on whether the appellant has a live claim of age discrimination.

and this Court has no jurisdiction to hear his complaint.

The government argues that Paetz had no claim pending at the relevant time. The administrative appeal he originally pursued raised claims based only on competition grades and bumping policies. Final determinations on both claims were rendered in early 1973, 5 C.F.R. § 772.307(c) (1972). This was over one year prior to the effective date of the ADEA amendments. It was only *after* Paetz petitioned the CSC to reopen his claim, two months prior to the effective date of the amendments, that the age claim was inserted. While that petition to reopen was pending in May, the government argues, it merely importuned the discretion of the CSC to reconsider Paetz's claim; it did not destroy the finality of the administrative decision rejecting that claim. That petition was denied in June of 1974. The question then becomes whether the petition to reopen his claim puts Paetz in the position of having an action pending at the critical date.

Until today we have never passed on the question of finality in civil service claim determinations. However, as does the majority, I believe that the appellant had been given a final decision and had no claim pending for several reasons. First, I find persuasive the reasoning of two cases by other circuits considering analogous statutes. Once a final determination is rendered in a civil service matter, the subsequent filing to reopen the claim does not transform the case into one pending so as to bring that petitioner under the aegis of a recent statutory enactment. *Ellis v. Merit Systems Protection Board*, 613 F.2d 49, 50 (3d Cir.1980) (*per curiam*) (petition to reconsider filed before but denied after effective date of new act); *Clark v. Goode*, 499 F.2d 130, 132–33 (4th Cir.1974) (mere fact that appellant had pending, before and after date amendments took effect, petitions to reopen an otherwise final decision not enough to bootstrap appellant under new

statutory cause of action).[2] The original final determination by the CSC was just that. Final. The petition to reopen did not give Paetz a cause of action under the new provisions.

Second, we can find an analogue in the provisions of the Administrative Procedures Act, 5 U.S.C.A. § 704. That Act provides that an administrative action is to be deemed final and subject to pursuit in the courts regardless of whether a petition to reopen and reconsider has been filed.

Third, logic compels finding that Paetz had no appeal pending. If we were to hold that the decision in 1973 was rendered nonfinal merely by the filing of a petition for rehearing, the effect would be that no decision of an administrative agency would ever be truly final. There would be no principled basis for preventing stale claims of ten or twenty or fifty years past from being revived and made subject to recent statutory causes of action. *Clark*, 499 F.2d at 133–34. Clearly Congress did not intend to make the various civil rights and discrimination acts retroactively applicable. But that would be the effect of holding for Paetz.

Since Paetz had no claim pending on May 1, 1974, I believe that Judge Haltom properly found that the trial court currently has no subject matter jurisdiction to consider his claim of age discrimination.

2.

Though the majority finds that Paetz had no claim pending in 1974, it takes away with the other hand that which it has just given. It finds dispositive the fact that the CSC subsequently reopened this matter and rendered a judgment on the merits of the age claim. I disagree.

The fundamental flaw in the majority's analysis is illustrated in the way it attempts to circumvent the holdings in *Clark* and *Macellaro*. It concedes that Paetz had no age claim pending in May of 1974, and holds that his *petition* to reopen the claim

2. *Cf. Macellaro v. Goldman*, 643 F.2d 813, 815–16 (D.C.Cir.1980) (claim arising prior to ADEA amendments might be actionable but only if part of "chain of discriminatory acts" that continues past enactment date).

does not destroy the finality of the CSC's earlier rejection of Paetz's two appeals. But the majority then holds, *ante* at 1536–1537 & n. 4, that this case differs from *Clark* and *Macellaro* in that the CSC and its successor *actually reopened* the claim, permitted the insertion of the age claim, and then issued a final determination on that claim in March of 1984. *See also ante* at 1537.

Thus the new rule for this Circuit is that a petition to reopen does not affect the finality of the administrative decision unless the administrative review board accepts the petition and reopens the matter, at which point it is as if the action was filed for the first time. This is but a stalking horse constructed by the majority to achieve its desired result of giving Paetz relief. This reasoning fails because it is founded on a faulty premise—that the CSC on its own initiative elected to reopen Paetz's claim and to begin *de novo*. That is simply not supported by the record.

Truly, as the majority notes *ante* at 1537, the CSC did begin anew and did expressly incorporate all of the issues alleged in Paetz's earlier claims. And truly this action has been continuously contested since its filing. But it is hardly surprising that the CSC responded as the majority observes; the Commission was under a *direct* court order to do so. R1–Tab 11–Exh. 1. The CSC had previously evinced no interest in reopening Paetz's claims. It had consistently rejected them.

The majority's analysis skips over a perhaps subtle but nonetheless critical point: the trial court had no authority to order a rehearing *de novo*. By the majority's own analysis, Paetz had no cognizable claim to advance under the terms of the ADEA in May of 1974 (his claim deriving only from the subsequent order to reopen the matter). Without that, he may not invoke the subject matter jurisdiction of the federal courts to resolve a claim under that statute. *Bunch*, 548 F.2d at 340. Thus the trial court had no authority to direct the CSC to reconsider the merits of the claim under the new statutory standard. The

whole subsequent course of these proceedings had as its source an order by the first trial judge that was clearly wrong. Accordingly, it furnishes no basis for a cause of action that did not otherwise exist. Judge Haltom properly recognized this and found that he had no jurisdiction.

Nonetheless, the majority presses on, finding a basis for relief premised on a blend of equity and estoppel. It cites to *Bunch*, 548 F.2d at 339, for the proposition that subject matter jurisdiction is to be found by an examination of congressional intent informed by "considerations of substantial justice." *Ante* at 1537. At its nub, the majority's position is that in extending the ADEA to federal workers Congress sought to excise discrimination from the employment context. Consistent with that purpose is a loose and expansive application of the amended ADEA even to cases that in reality arose prior to the extension of the Act if still pursued subsequently. In short, because the majority believes that Paetz has a colorable claim on the merits, it would be to commit "manifest injustice" to require him to observe the niceties of the usual jurisdictional requirements. *See generally ante* at 1537–1538. As the majority observes, "We must take into account the unfairness that would be manifest in denying Paetz access to court . . . ." *Id.* at 1537–1538.

This "legislative history *cum* equity" argument is a mischievous notion and it fails for two reasons. First, it is no mere shibboleth that a statute is not to be applied retrospectively absent clear evidence of congressional intent to the contrary. *United States v. Security Industrial Bank,* 459 U.S. 70, 79, 103 S.Ct. 407, 412, 74 L.Ed.2d 235 (1982); *Brewster v. Gage,* 280 U.S. 327, 337, 50 S.Ct. 115, 117, 74 L.Ed. 457 (1930); *United States v. The Schooner Peggy,* 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801); *Cox v. Schweiker,* 684 F.2d 310, 318–19 (5th Cir. Unit B 1982); 2 C. Sands, *Sutherland on Statutory Construction* § 4104, at 252 (4th ed. 1972 & Supp.1985); *cf. Bradley v. Richmond School Board,* 416 U.S. 696, 711–21, 94 S.Ct. 2006, 2016–21, 40

L.Ed.2d 476 (1974) (absent evident congressional intent to the contrary, statutory amendment is presumed to apply to pending cases). Under both the looser standard of *Bunch* and the more traditional approach, there must be evidence of congressional intent to apply the ADEA amendment to cases having their source prior to 1974.

The majority makes vague references to congressional intent to apply this statute expansively, but its opinion is notable for its lack of citation to any portion of the congressional history. This is not surprising, for there is no such evidence. The provisions of the ADEA were extended to federal workers as part of the Fair Labor Standards Amendment of 1974. The legislative history of that revision is set forth at H.R.Rep. No. 913, 93d Cong., 2d Sess., *reprinted in* 1974 *U.S. Code Cong. & Ad. News* 2811, 2825, 2849, 2860, and is devoid of any suggestion that the revisions are to be applied to claims arising before the effective date of the amendment.

Second, equity can do many things—chief among them minimize the harsh effect of rigid application of the law.[3] But even courts of equity cannot squarely abrogate positive law. 3 W. Blackstone, *Commentaries* *429. Few questions in American law are more squarely settled than that a federal court may not, under the constitutional grant of Article III, resolve a case unless seized of subject matter jurisdiction. *Stoll v. Gottlieb*, 305 U.S. 165, 171, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938) ("A court does not have the power, by judicial fiat, to extend its jurisdiction over matters beyond the scope of the authority granted to it by its creators."). Courts may not disregard this requirement even in the face of hardship or harsh result. *Mansfield, Coldwater & Lake Michigan R. Co. v. Swan*, 111 U.S. 379, 381–82, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884) (though it sometimes "seems to be an anomaly and a hardship ... the rule, springing from the nature and limits of the judicial power of the United States, is inflexible and without exception, which requires this court, of its own motion, to deny its own jurisdiction, and ... that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record on which ... it is called to act."); *Thompson v. Railroad Companies*, 73 U.S. (6 Wall.) 134, 137, 18 L.Ed. 765 (1867) (court in equity must not rule if at any point "plain defect of jurisdiction appears"); *Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126, 127, 2 L.Ed. 229 (1804). Equity affords some flexibility to the application of law in order to effect substantial justice. But the majority's holding flexes the law past the breaking point. Equity simply cannot justify decision absent subject matter jurisdiction.

The majority also moors its opinion to an estoppel argument of sorts. It reasons that regardless of any errors of law by the trial judge in 1977, at this point "the United States is too late in asserting its defense of lack of subject matter jurisdiction as to the prior lawsuit: we are now dealing with a new administrative record and a lawsuit resulting from the new record." *Ante* at 1537. The majority is troubled, not unjusti-

---

**3.** Of course, with the merger of law and equity in 1938, courts are no longer bound to observe all of the vestigial procedural distinctions between actions in law and in equity. F. James & G. Hazard, *Civil Procedure* 22 (2d ed. 1977). But assuming that jurisdiction in equity is still governed solely by the old common law rules, it is beyond cavil that even a court of equity may not pass on a controversy without first satisfying itself of the existence of jurisdiction over the subject matter presented. *See, e.g., Guaranty Trust Co. v. York*, 326 U.S. 99, 105–12, 65 S.Ct. 1464, 1467–71, 89 L.Ed. 1079 (1945) (federal court granting equitable remedy based on diversity); *DiGiovanni v. Camden Ins. Ass'n*, 296 U.S. 64, 69, 56 S.Ct. 1, 3, 80 L.Ed. 47 (1935) ("Whether a suitor is entitled to equitable relief in the federal courts, *other jurisdictional requirements being satisfied,* is strictly not a question of jurisdiction in the sense of the power of a federal court to act. It is a question only of the merits...." ) (emphasis supplied) (federal court in equity has federal question jurisdiction only if amount in controversy requirement met). This question has been settled since William the Conqueror created the court of exchequer, progenitor to the courts of equity, nearly nine centuries past. 3 W. Blackstone, *Commentaries* *44–46, *426.

fiably, by the tremendous waste that would be engendered by finding "that the 1977 remand was for naught, and [that] the long, hotly contested administrative proceedings, in which the government participated without objection,[4] should be considered as never occurring." *Ante,* at 1537–38 n. 6. To hold otherwise, the majority concludes, is contrary to common sense. I agree and lament that this matter has resulted in a great waste of time and money for all concerned. But this was caused by the first trial judge who in 1977 acted without authority in ordering the rehearing *de novo.*

Regardless of the error then committed, the majority simply compounds that error by perpetuating it through the application of estoppel. It errs for two reasons. First, it is hornbook law that a defect in subject matter jurisdiction may never be "too late" asserted.[5] Fed.R.Civ.P. 12(h)(3). Such a defect goes to the very legitimacy and propriety of federal court consideration. Whether or not the government actually raised the issue, and whether or not the first trial judge actually considered and found subject matter jurisdiction, is irrelevant because jurisdiction clearly did not exist. The doctrine of estoppel (or of issue preclusion which Paetz advances) cannot bind us to a prior determination of this question.

Second, even assuming that estoppel may apply, it is indisputable from the record that the government challenged subject matter jurisdiction right out of the box. Its motion for summary judgment was based, *inter alia,* on a challenge to jurisdiction because the plaintiff did not have a claim pending on the date the ADEA was extended and because he failed to allege an age claim in seeking administrative relief.[6] Inexplicably, the majority chooses to ignore this fact.

In short, I am unable to join the majority's result. Regardless of the equities of the situation, Paetz has no right to relief; in granting him a remedy on grounds of equity and estoppel the majority upends nine hundred years of precedent to the contrary.

### B.

There are still two pendent claims: improper administrative delay in adjudication; and improper use of select out procedures. These claims were presented to the trial court, but in granting the government's motion for summary judgment the trial judge failed to give them explicit consideration. He evidently believed that once the age claim was excised from this case the proper resolution of the pendent claims lay with the Federal Circuit, although he failed to order the case transferred to that court's docket. Appellant realleges these claims here and the government does not respond to them. The majority declines to consider them, leaving it to the trial court to deter-

---

**4.** Despite the majority's contention to the contrary, the government clearly did raise the jurisdictional question in its motion for summary judgment in the original action in the district court in 1976:

> 1. As to claims numbered "2" and "3" ..., plaintiff cannot recover as the United States had not waived sovereign immunity as to claims of age discrimination as of the dates of plaintiff's downgrading in 1971 and termination in 1972. Therefore, the Court is without jurisdiction as to these issues.
> 2. As to the claims numbered "2" and "3" ..., plaintiff cannot recover on the issue of age discrimination and discrimination due to years of service for failure to raise these issues during his administrative appeal.
>
> R1–Tab 11–Exh. 3.

The trial court disregarded this and proceeded to order the remand without passing on the jurisdictional question. The government can

hardly be faulted for not continuing to press the point in the face of a square court order to the contrary.

**5.** The only decision of which I am aware that may be taken to suggest even marginally that a jurisdictional defect may ever be "overlooked" is the opinion of Justice White for the Supreme Court in *Insurance Corporation of Ireland, Ltd. v. Compagnie Des Bauxites De Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), a case premised on a factual setting far different from that instant—namely the Court found jurisdiction as a sanction for the defendant's failure to cooperate in discovery ordered to determine whether subject matter jurisdiction existed. The Court has never suggested that this small exception could or should be more broadly applied.

**6.** *See* footnote 4, *supra.*

mine whether a transfer is warranted depending on its disposition of the age claim upon remand.

This is no longer a "mixed case." Once the age claim washed out the court below properly declined to pass on the pendent claims because under current law they should be heard on direct appeal to the United States Court of Appeals for the Federal Circuit. 5 U.S.C.A. § 7703(b)(1). The fact that the law extant at the time this action was originally filed, 5 U.S.C.A. § 703 (1970), would have placed jurisdiction in the court below is of no consequence, for each court is bound "to apply the law in effect at the time it renders its decision...." *Bradley*, 416 U.S. at 711, 94 S.Ct. at 2016; *see also Williams v. Department of Army*, 715 F.2d 1485 (Fed.Cir. 1983) (*en banc*) (applying provisions of Federal Courts Improvement Act to determine jurisdiction even though cause of action arose before effective date of Act). Because I believe that the age claim is not viable, and because under the currently applicable statute Congress has entrusted the pendent claims to the Federal Circuit, I would dispose of them by ordering this case transferred to that court for consideration on the merits.

For the reasons foregoing I am unable to join in the majority's disposition of this case. I dissent.