**William F. JENNINGS, Individually and as Next Friend of Naomi Jennings, a Minor, Plaintiff–Appellant,**

**and Don Gladden, Appellant,**

v.

**JOSHUA INDEPENDENT SCHOOL DISTRICT, et al., Defendants–Appellees,**

**Francesca Raines and Royce Ingersoll, etc., Defendants Third–Party Plaintiffs–Appellees,**

**Security Associates International, Third–Party Defendants–Appellees.**

No. 88–1089.

United States Court of Appeals, Fifth Circuit.

April 12, 1989.

Gladden, Fort Worth, Tex., for plaintiff-appellant.

Lawrence Ackels, Jr., and Gregory K. Ackels, Ackels, Ackels & Ackels, Dallas, Tex., for Officer David Stevens.

Hollye C. Fisk, and Elizabeth L. Phifer, Fisk & Fielder, Dallas, Tex., for Francesa Raines, et al.

David Owen, Owen, Wilson & Carr, Fort Worth, Tex., for Joshua Independent School Dist., et al.

Mark M. Donheiser, Dallas, Tex., for Security Assoc.

Before WISDOM, GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This case is a civil rights action brought under 42 U.S.C. § 1983, against school officials, a policeman, sniffer-dog handlers and other defendants. William Jennings, father of Naomi Jennings, alleged that the defendants violated his and his daughter's fourth amendment rights by conducting a search of his automobile in the Joshua High School parking lot pursuant to a search warrant. Jennings appeals from a judgment of the district court based on a directed verdict for all defendants except Officer David Stevens, who won before the jury. Both Jennings and his attorney, Don Gladden, also appeal from that portion of the judgment imposing sanctions jointly and severally against each of them under Rule 11 of the Federal Rules of Civil Procedure. Because there was no basis in fact or law to hold any of the defendants, except the police officer, liable for violating the defendants' fourth amendment rights, and because the police officer was entitled to immunity, we affirm.

I

At the time the essential facts of this case occurred, the Joshua Independent School District maintained a program intended to educate students of the dangers of drugs, alcohol and weapons, and to deter students from bringing any of those items to school. Defendant Security Associates International (S.A.I.) contracted to provide the school with a sniffer-dog service to detect narcotics, marijuana, alcohol, firearms, ammunition and pyrotechnics on campus. Periodically, as a deterrent, the dogs would be walked through the school parking lot. If a dog was alerted by a scent from a car, the school's policy was to contact the student responsible for the vehicle. If the student refused to consent to a search of the car, school authorities would contact the student's parent. If the parent refused consent, then the authorities would contact law enforcement officials. The hope was that these inspections would discourage students from bringing to school substances and objects banned under school policy.

On March 29, 1985, a trained sniffer dog named King was alerted by an unattended car in the Joshua High School parking lot. William Jennings' daughter Naomi had driven the car to school that day. Naomi Jennings was called out of school and

asked to consent to a search of the vehicle. She refused because her father, who had had various jobs as a federal law enforcement official investigating embezzlement and fraud in the United States postal system, had instructed her to refuse consent and call him if a dog ever was alerted by the car. William Jennings had learned of the school sniffer-dog program in January of 1985 when Naomi described it to him, and Jennings had then expressed his disapproval of the program on fourth amendment grounds.

Jennings was notified that a sniffer dog had reacted to his car, and he drove to the Joshua High School parking lot, where he met his daughter, his wife, the dog handler, the principal and the vice principal of the high school. After he also refused consent, the school officials contacted the police, and police officer Stevens arrived. Jennings was informed that the situation was going to be a police matter, and Officer Stevens proceeded to conduct an independent investigation. He asked defendant Francesca Raines, the dog handler, for information on the dog's reliability and training, and was given a demonstration of how the dog worked. He was also shown reports of what had been found in other cars that had alerted the dog that day. Stevens telephoned the county attorney for advice on whether there was sufficient probable cause to justify seeking a search warrant and then drove Raines to the county attorney's office, in case the county attorney wished to ask her any questions. Jennings, who was present at the scene throughout the investigation, then waited in the school parking lot with the vice principal of the high school for Officer Stevens to return.

The county attorney, after consulting with Raines and Stevens, concluded that there was sufficient evidence to apply for a search warrant, and directed the preparation of an affidavit. The county judge determined that probable cause existed and issued a search warrant. Officer Stevens and Raines returned to the school parking lot where Stevens executed the search warrant in front of Jennings. That search revealed no object or substance prohibited by law or school policy.

On August 29, 1985, Jennings brought this civil rights suit under 42 U.S.C. § 1983 on behalf of himself and his minor daughter, Naomi, against Joshua Independent School District ("J.I.S.D."), Greenawalt (Superintendent of Schools), Loftin, (vice principal of the high school), Officer Stevens (employed by the City of Joshua), the City of Joshua itself, and Francesca Raines and Royce Ingersoll, d/b/a The Institute of Criminal and Civil Investigations (the dog handlers). S.A.I., who provided the sniffer-dog service to the high school, was later added as a defendant, and Jennings later withdrew his claim against the city as a defendant.

On November 7, 1986 the district court denied the motions for summary judgment of three school defendants and the dog handlers because no evidence had been submitted relating to the dog's reliability. On January 28, 1987 the district court denied S.A.I.'s and Stevens' motions for summary judgment.

A five-day trial began on October 5, 1987. At the close of the plaintiffs' case the court directed a verdict in favor of the school defendants, Ingersoll and Raines, and S.A.I. The jury returned a verdict for Stevens.

On January 5, 1988 the district court entered judgment finding Stevens not liable pursuant to the jury's verdict, directing a verdict for all the remaining defendants, awarding attorneys' fees to all defendants except Stevens, and imposing sanctions against Jennings and his attorney pursuant to Rule 11. Jennings filed a timely notice of appeal.

## II

### A.

■ Jennings' first claim on appeal is that the district court erred in failing to rule that no probable cause existed for the search of his car, or, alternatively, erred in failing to submit that issue to the jury.

As to defendants Ingersoll, Raines, J.I.S.D., Greenawalt, Loftin and S.A.I., there

was no need for the district judge to make a determination of the existence or nonexistence of probable cause. Whether probable cause in fact existed is irrelevant to the directed verdict granted in their favor. The use of trained dogs to sniff automobiles parked on public parking lots does not constitute a search within the meaning of the fourth amendment. *Horton v. Goose Creek Independent School District*, 690 F.2d 470, 477 (5th Cir.1982), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983). Once William Jennings declined to allow a search of his car, these defendants withdrew, except as witnesses, and turned the matter completely over to law enforcement officials. They therefore cannot be liable for any constitutional violation that followed.

To be liable under section 1983 a defendant must have been personally implicated in the wilful act causing the deprivation of a constitutional right, or must have had or been chargeable with knowledge that his subordinates were causing a constitutional deprivation. *Love v. King*, 784 F.2d 708, 711 (5th Cir.1986). Though the school officials contacted the police, their actions cannot be said to have been the legal cause of any subsequent deprivation of the Jennings' fourth amendment rights. Officer Stevens made an independent investigation when he reached the school parking lot; the county attorney, after review, authorized the application for the warrant; and the judge then made his own independent determination of probable cause based on the information Officer Stevens had gathered and on the affidavit drawn up by the county attorney. Nor may dog handler Raines or any of the other defendants be said to have been personally implicated in or jointly responsible for Stevens' actions merely because he or she furnished information to Stevens in the course of his investigation, *see Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc.*, 673 F.2d 771, 772 (5th Cir.1982); *White v. Scrivner Corp.*, 594 F.2d 140, 143–44 (5th Cir.1979). Further, Officer Stevens was not a "subordinate" of any of the named defendants, because none had any duty or authority to control his actions, and none of the defendants had any knowledge that Officer Stevens might act unlawfully in pursuing and executing a search warrant on the Jennings' car.

As the record makes plain, none of these defendants acted outside the scope of his or her authority in conducting, directing or allowing the sniff search of the Jennings' car, or acted jointly with the police to cause the deprivation of the Jennings' constitutional rights. Even if the district court had submitted the issue of probable cause to the jury with respect to these defendants, and the jury had found probable cause lacking, the finding would not support a judgment against these defendants.

### B.

As to defendant Stevens, it was also unnecessary for the district court, or the jury, to decide whether probable cause for the issuance of the search warrant existed, since his liability turns on immunity, not on a determination of actual probable cause.[1]

---

1. The only interrogatories submitted to the jury were the following:

   QUESTION NUMBER 1
   The burden of proof is on the plaintiffs.
   Do you find from a preponderance of the evidence that defendant Stevens had knowledge, or had reason to believe, at the time of making his affidavit, that material facts existed with regard to limitations on the capabilities of the dog which he omitted from the search warrant affidavit?
   Answer "we do" or "we do not."
   [ANSWER: *We do not.*]
   QUESTION NUMBER 2
   Answer this question only if you answered question Number 1 "we do."

   The burden of proof is on the plaintiffs. Do you find from a preponderance of the evidence that defendant Stevens intentionally, or with reckless disregard for the truth, omitted the material facts from the affidavit?
   Answer "we do" or "we do not."
   [ANSWER: _____]
   Although the record is unclear on what authority the district court relied for these questions to determine immunity, it is apparent that the jury was in effect asked to decide factual disputes that would resolve whether Stevens had acted in good faith. The jury found that he had.
   Gladden and Jennings objected to question one on the grounds that it did not constitute the ultimate issue to be decided by the jury, which

In *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the Supreme Court reviewed a civil rights action brought under section 1983 against a police officer, alleging that the plaintiffs had been arrested on warrants, secured by the officer, that were unsupported by probable cause. The Court announced the following test for the defense of qualified immunity for police officers in this context: "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue, but if officers of reasonable competence could disagree on this issue, immunity should be recognized." 475 U.S. at 341, 106 S.Ct. at 1096. The question to be asked, under *Malley,* is "whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for a warrant." *Id.* 106 S.Ct. at 1098.

It is true, as Jennings argues, that, although King, the dog, was trained to detect various contraband, he also was capable of reacting to some nonprescription drugs and to residual scents lingering for up to four to six weeks. While the district court assumed that Stevens' good faith would exonerate him from liability under the doctrine of qualified immunity, we examine the case under *Malley* and review Stevens' conduct to determine whether it should have been obvious that a reasonably competent officer would have concluded on the basis of the garnered information that probable cause existed.

In this case there were enough undisputed facts for the court to have made a legal determination that Stevens was entitled to immunity.[2] We certainly cannot say that it was obvious that an application for a war-

rant should not have been made in this case. Officer Stevens' affidavit stated that past experience had proved King to be reliable in the detection of "pyrotechnics, alcoholic beverages, dangerous drugs and controlled substances (including marijuana)." It further stated that "[o]n March 29, 1985 the dog alerted his handler that 10 specific automobiles had some or one or more of" these substances. Seven of these cars were searched with the consent of their owners, and "one of the following pyrotechnics, alcoholic beverages, dangerous drugs or controlled substances (including marijuana) was located in [each] automobile." The record shows that of the eight cars actually searched that day, the following was found in each respectively: a 25 caliber pistol, loaded; sixteen 12 gauge shells, beer caps; nine empty beer bottles and four empty beer cans; two 12 gauge shells, two empty beer cans; asthma medication; five empty beer cans and a Primatene inhaler; a cap pistol and caps containing gun powder; the scent of previously vomited beer.

Section 46.04(a) of the Texas Penal Code prohibits the knowing or reckless possession of firearms or explosive weapons on school property. The Texas Education Code, section 4.22, prohibits the possession of any intoxicating beverage for consumption, sale or distribution, on school grounds. Although there is some question as to whether beer residue inside empty beer cans would be in violation of the Texas Education Code, "only where the warrant application is so lacking in probable cause as to render official belief in its existence unreasonable ... will the shield of immunity be lost." *Malley,* 475 U.S. at 341, 106 S.Ct. at 1098; *Taylor v. City of Nederland, Texas,* 685 F.Supp. 616, 618 (E.D.Tex.1988). Although we do not decide

---

should have been whether or not probable cause existed. Gladden also objected to the fact that question two was conditioned upon an affirmative answer to question one, and made a *Malley* objection to the damages interrogatories, which were also conditioned on an affirmative answer to question one.

Stevens objected to the charge as a whole on the grounds that it failed to instruct the jury that reasonable good faith is a defense under *Reimer v. Short,* 578 F.2d 621 (5th Cir.1978).

*Reimer* was of pre-*Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), pre-*Malley* case. Stevens further objected to the use of the term "material fact" in the charge.

2. Since the *Malley* test is objective rather than subjective, and since the record below developed sufficient undisputed facts, the issue of Stevens' immunity under *Malley* is one for the court to decide as a matter of law.

whether probable cause existed in this case, we can say that Officer Stevens' belief in the existence of probable cause was not objectively unreasonable given the proven reliability of the dog on the day in question in detecting the presence of trace amounts of alcoholic beverages, pyrotechnics and controlled substances in vehicles in the school parking lot. When a factual situation presents a close question on probable cause, the benefit of the doubt belongs to the police officer who submits the close question for a magistrate's decision.

Finally, we observe that although *Malley* does not indicate that the cautionary and reasonable conduct of the officer factors into the objective standard, we do think that Stevens, by any objective standard, acted reasonably when he sought the advice of the county attorney as well as the advice of his superiors in the police department before applying for the warrant.

### III

■ Jennings' second assertion of error is that the district court wrongly held that the charged conduct of the school defendants, the dog handlers, and S.A.I. was not attributable to the state for section 1983 purposes.[3] Section 1983 provides that:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable....

For reasons previously discussed, it is clear that none of these parties took action under color of state law to deprive Jennings or his daughter of any constitutional right.

When the Jennings refused to consent to a search of their car, the school defendants turned the matter completely over to Officer Stevens who conducted his own inde-pendent investigation. The search that followed was not the result of state action on the part of the school defendants because none of the defendants was responsible for Officer Stevens' decision to seek a warrant, or for the manner in which he prepared his affidavit. There is no evidence on the record to indicate that the school authorities acted jointly or in concert with Officer Stevens to deprive the Jennings' of constitutional rights, or that a custom or preconceived plan existed between the police and the school district to conduct automobile searches on less than probable cause where the police were involved. Further, the school defendants and dog handlers had no reason to believe that Officer Stevens would not act lawfully once they withdrew and put the matter in his hands.

Although Raines, Ingersoll and S.A.I. contracted with J.I.S.D. to provide and handle sniffer dogs to assist the school authorities in controlling illicit drugs, which might suggest that those parties under certain circumstances could have been state actors, based on the facts here, that contract cannot serve as the basis for a section 1983 cause of action against them; because the use of a trained dog to sniff a parked car does not constitute a search under the fourth amendment, their execution of that contract deprived the Jennings of no constitutional rights. *See Horton*, 690 F.2d at 477.

Furthermore, Raines was not acting under color of state law when she later simply communicated to Officer Stevens what had transpired in the school parking lot, and described and demonstrated to him King's capabilities. After the dog was alerted, she played no further part in the investigation except as called upon by the police as a witness. Indeed, she operated under instructions that she was not voluntarily to involve herself in any police investigation that might result after a sniffer dog was alerted. For all practical purposes, Raines' obligations under the con-

---

**3.** Although it would appear unnecessary to address the issue of state action since we have previously concluded that these defendants bore no ultimate responsibility for the issuance of the warrant, this issue is relevant to our later determination of the propriety of Rule 11 sanctions in this case.

tract with the school ended once she had walked King through the school parking lot, noted the automobiles to which the dog reacted, conducted searches of those vehicles when the owners' consent could be obtained, and recorded any substances found. Raines did not contact the police, and when the police arrived, only responded to Stevens' questions; the furnishing of information by a private party to a police officer who then acts on his own initiative is not action taken under color of state law. *Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1078–79 (5th Cir.1985); *Hernandez v. Schwegmann* at 772; *White v. Scrivner Corp.*, 594 F.2d at 143.

## IV

■ Jennings' and his attorney's third contention on appeal is that the district court abused its discretion in holding Jennings and Gladden jointly and severally liable to the defendants, with the exception of Officer Stevens, for attorneys' fees. The district court imposed fees under the authority of both section 1988 and Rule 11, and the amount was determined by the formula generally applied under section 1988.

Section 1988 provides that prevailing defendants may recover attorneys' fees only upon a finding that the plaintiff's claim is frivolous, unreasonable, groundless, made in bad faith, or persisted in after it becomes apparent that any of the above is the case. 42 U.S.C. § 1988. The district court found Jennings' case to be frivolous and without merit as to all defendants except Stevens, in spite of the court's acknowledgment that it had denied the motions of these defendants for summary judgment and conducted a five-day jury trial on the

merits.[4] The court noted in the sanctions order now on appeal that it had denied these motions because the parties had failed to submit any evidence as to whether the dog had any ability to detect contraband. Lacking such evidence, the court did not grant them summary judgment. The only issues submitted to the jury at trial concerned Officer Stevens: whether Stevens had knowledge or reason to believe at the time of making his affidavit that there existed material facts regarding the dog's limited capabilities that he omitted from the affidavit, and, if he had such knowledge, whether he intentionally or with reckless disregard omitted those material facts.[5]

The district court held Jennings liable for attorney's fees under section 1988, and then imposes those sanctions jointly and severally upon Jennings and his attorney under Rule 11. We will not address whether attorney's fees were awardable under section 1988; we address only whether they were awardable under Rule 11.

Rule 11 requires that every paper signed and filed during the course of proceedings be, to the best of the signer's knowledge, information and belief formed after reasonable inquiry, well grounded in fact, warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and not imposed for any improper purpose, such as to harass or to cause unnecessary delay or increase in the cost of litigation. Fed.R.Civ. P. 11. Under the *Thomas* "snapshot" rule, a district court should not take the benefit of hindsight. It should look only at what the attorney objectively knew at the time the paper was signed and ask whether, at the time it was signed, the paper violated the Rule 11 standard of good faith and

---

4. Ingersoll and Raines filed a motion for summary judgment on March 24, 1986, and J.I.S.D., Greenawalt and Loftin filed the same motion on June 16, 1986. Both motions were denied on November 7, 1986. S.A.I.'s motion for summary judgment was filed on December 18, 1986, and denied on January 28, 1987.

Officer Stevens filed a motion for summary judgment on December 19, 1986 on grounds of absolute and qualified immunity, which the district court denied on January 28, 1987, stating that Stevens had no defense of absolute immu-

nity, and subjective good faith for qualified immunity purposes is always a question of fact.

5. As we have noted earlier, subjective good faith is not at issue in a determination of whether Stevens enjoyed immunity. Rather the question under *Malley* is whether, on an objective basis, it should have been obvious to Stevens that no reasonably competent officer would have concluded from the information Stevens had gathered that a warrant should issue.

reasonable investigation. *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866 (5th Cir.1988) (en banc).

In the case before us, the district court calculated and imposed as sanctions the reasonable attorneys' fees incurred by all parties, except Officer Stevens, during the pendency of the case. Thus our Rule 11 snapshot is taken at the time the complaint was filed. The court found that:

> Plaintiffs, counseled by their attorney, sued Defendants knowing at the outset what the evidence, for the most part, would show. Plaintiffs and their attorney pursued discovery, which revealed little more than was originally known. Defendants had to defend by participation in discovery and trial. Surely, the outcome was foreseeable to Plaintiffs' attorney, if not entirely plain to Plaintiff William Jennings himself. It is apparent from Plaintiff William Jennings' testimony that his only purpose in bringing suit was to harass all the defendants. Plaintiffs' attorney cooperated fully in this endeavor. Certainly, it is this type of practice by parties and their attorneys that Rule 11 was meant to eliminate.

The filing of a complaint that complies with the "well grounded in fact and warranted by existing law" prong of Rule 11 cannot, as a matter of law, harass the defendant as Rule 11 forbids, regardless of the plaintiff's subjective intent, or so we have held. *National Ass'n of Government Employees v. National Federation of Federal Employees*, 844 F.2d 216, 223–24 (5th Cir. 1988). If Jennings' original complaint passes the test of nonfrivolousness, its filing does not constitute harassment for Rule 11 purposes. *Id.* Therefore, we consider whether the district court abused its discretion in finding that a Rule 11 violation occurred at the time Jennings' complaint was filed, and whether the court abused its discretion in imposing the sanctions it chose to impose. *See Thomas* at 872.

Jennings was fully aware of all the pertinent facts relating to this lawsuit on the day the search of his vehicle occurred. He understood the school's program, he was present at the school parking lot at all the relevant times, he observed communications between the parties, he knew that Stevens left the scene with Raines, the dog handler, to obtain a search warrant, and he knew that a judge had issued the warrant on the basis of the sniffer dog's alert. No pre-complaint investigation was conducted. Discovery brought forth no new evidence nor was there any basis for expecting it to do so. Because the facts were known and virtually uncontested, the question here for Rule 11 purposes must be whether Jennings' legal theories—first, that his fourth amendment rights had been violated by the search, and second that the school defendants, dog handlers and owners had acted under color of state law to deprive him of his rights under the fourth and fourteenth amendments and state law—could fairly be said to have been unreasonable from the point of view both of existing law and its possible extension, modification or reversal. *See Smith International, Inc. v. Texas Commerce Bank*, 844 F.2d 1193, 1200 (5th Cir.1988).

William Jennings had voiced his strong disapproval of the J.I.S.D. sniffer-dog search program to his family prior to the events at issue in this case. He told his daughter not to cooperate if a dog ever reacted to his car. After Jennings arrived at the school parking lot on March 29, 1985, he threatened to sue everyone on the premises, and then did bring this lawsuit against everyone related in any way to the incident. He did this in spite of the fact that, as he testified at trial, he did not think that his or his daughter's constitutional rights had been violated by any of the discrete actions of the school officials or dog handler Raines prior to the time Officer Stevens left to obtain a search warrant. We further observe that Don Gladden agreed to represent William Jennings and his daughter without compensation, and that the American Civil Liberties Union, Gladden's employer, was concerned with whether sniffer-dog searches, in the absence of prior particularized suspicion, provide school authorities with reasonable cause, or police officers with probable cause, to search ve-

hicles on school property. This matter, however, had been addressed in *Horton,* and no Supreme Court or later authority has been cited to suggest that *Horton*'s principles of law might be overturned.

Gladden argues that he named the particular defendants because he believed that all acted at some point pursuant to government contract, and believed that the causal relationship here between the sniff search and the execution of the search warrant was such that those defendants should not be insulated from section 1983 liability. Gladden contends that if the facts revealed the school defendants, dog handlers and owners had acted in concert with Stevens to deprive the Jennings of their constitutional rights, those defendants should share liability with Officer Stevens for such deprivation. But Jennings and Gladden conducted no pre-complaint investigation at all to determine whether there was any basis for a theory of collusive conduct between the police and the other defendants. At the time of the filing of the complaint, there was no evidence or even suggestion that this connivance existed. Discovery added nothing at all; it showed that the J.I.S.D. policy in fact states that if a parent refuses consent, the matter is one for the police from that point forward. The S.A.I. policies and procedures handbook similarly states that "if the district decides to notify the police in completing the search, the matter is in their hands," and S.A.I. people are not to get involved, unless specifically requested to do so by the police.

All parties concerned acted within the scope of their respective authorities and the facts supporting this conclusion were essentially known to Jennings and Gladden at the time the complaint was filed. Officer Stevens conducted an independent investigation of the facts when he arrived on the scene; the school defendants withdrew after Jennings refused to consent to the search of his car, and Officer Stevens, upon advice of the county attorney, obtained an authorized search warrant ultimately used to effectuate the search. There was simply no basis for suspicion that the school was in collusion with the police. Because it

should have been clear at the outset to Jennings and his attorney that even if the county judge had issued the warrant on insufficient probable cause, the facts could not have supported claims against any of the named defendants except Officer Stevens, the district court did not abuse its discretion in imposing Rule 11 sanctions jointly and severally upon Jennings and his attorney, Don Gladden, for their claims against the school defendants, dog handlers and dog owners. *See Smith International,* 844 F.2d at 1201; *Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1125, 1131 (5th Cir.1987); *Southern Leasing Partners, Ltd. v. McMullan,* 801 F.2d 783, 789 (5th Cir.1986).

Nor is there any abuse of discretion in the district court's decision not to discount sanctions because the court allowed this case to go to trial. As we stated in *Thomas,* "a determination of whether or not a pleading is well grounded in law and fact may not be feasible until after an evidentiary hearing on a motion for summary judgment or even after the parties have presented their case at trial." 836 F.2d at 881. The district court adequately explained to the parties why it denied their motions for summary judgment, and granted the motions of all defendants except Officer Stevens for a directed verdict at its earliest opportunity, the close of the plaintiff's evidence. It was not an abuse of discretion for the district court to find that all litigation costs in this proceeding, incurred by all defendants except Stevens, resulted directly from Jennings' filing of an original complaint deficient under Rule 11.

In sum, we believe after review of the record, that the district court did not abuse its discretion in finding that this case was not well grounded in fact or law from its inception against all defendants except Officer Stevens, and in imposing Rule 11 sanctions against Jennings and his attorney accordingly. All of the material facts were known to Jennings and Gladden at the time they filed their complaint, and a reasonable inquiry into the law would have demonstrated that the complaint against the school authorities and the dog handlers

was not warranted by existing law or a good-faith argument for the extension, modification or reversal of existing law. Not only was there no basis to suspect collusion between the school authorities and the police, but Jennings and Gladden made no reasonable inquiry to determine whether there were even minimal facts suggesting that the school authorities and police had colluded to deprive the plaintiffs of their constitutional rights.

Although this is a close case with respect to sanctions, and if we had been sitting as district judges we might have arrived at a different conclusion, given these circumstances we cannot say that it was an abuse of discretion for the district court to conclude that the complaint in this case was filed in violation of Rule 11.

## V

For the foregoing reasons, the judgment of the district court is in all respects

AFFIRMED.