## Billy Don HAMRICK

v.

## CITY OF EUSTACE, et al.

### No. TY–87–238–CA.

United States District Court,
E.D. Texas,
Tyler Division.

March 19, 1990.

---

Ronald R. Waldie, Seven Points, Tex., and Barry L. Elliott, Mabank, Tex., for plaintiff.

Jack McKinley, Hirsch, Glover, Robinson & Sheiness, Houston, Tex., for defendants.

## JUDGMENT NOTWITHSTANDING THE VERDICT

STEGER, District Judge.

On this day came on to be considered the defendants' Motion for Judgment Notwithstanding the Verdict or, in the Alternative, Motion for New Trial.[1] After careful consideration, the Court is of the opinion that the following disposition is appropriate.

## I. SUMMARY OF THE EVIDENCE

### A. *The Investigation*

The facts in this case show that on June 28, 1985 Billy Don Hamrick (Hamrick) was the victim of an unlawful arrest and seizure of his person and an unlawful search of his automobile. As of June 27, 1985, Hamrick worked at Hull Tractor Company (HTC) in Eustace, Texas. On that day, Hamrick had a disagreement with Perry Hull (Hull), the owner of HTC, and Raymond Chasteen (Chasteen), the manager of HTC, over wages that were owed to Hamrick. As a result of the wages that HTC owed to Hamrick, Hamrick quit his job and left the premises of HTC with a valve grinding machine that he had brought to work with him. As Hamrick was leaving with the machine, a fellow worker, Juan Duran, saw Hamrick load the machine into his car. Duran then told Chasteen that Hamrick had taken the valve grinding machine with him. The next day, June 28, 1985, Chasteen called the Eustace City Police Department and reported that Hamrick had stolen the valve grinding machine. Officer Dewayne Mixon (Mixon) was then dispatched to investigate the alleged theft.

Although Chasteen reported that the valve grinding machine had been stolen, neither Hull nor Chasteen actually owned the machine. In his deposition, Hull even admitted that, in view of the surrounding circumstances, Hull never had any hold over the machine at all. Hull also stated in his deposition that it would be a lie for him to say that he owned the machine. As previously mentioned, when Hamrick first started to work at HTC, Hamrick had brought the valve grinding machine to work with him. At the time that Hamrick started to work, both Hull and Chasteen admitted that they believed that Hamrick owned the machine. Later, however, Hull and Chasteen contend that Eugene Parks (Parks) told them that he, Parks, had loaned the machine to Hamrick. Parks, though, denies that he ever made that statement to Hull or Chasteen. Additionally, Parks and Hamrick both claim that Hamrick purchased the machine from Parks prior to the date that Hamrick started working for HTC. While Chasteen claims that he cannot remember exactly what he told Mixon during Mixon's investigation of the alleged crime, Chasteen did testify that he was very forthcoming with Mixon and that he believes he told Mixon all the facts, including those facts set out above pertaining to the ownership of the machine. Mixon also talked to Juan Duran and got him to sign a statement that he had seen Hamrick take the machine from HTC. After talking to Chasteen and taking a sworn statement from Duran, Mixon spoke with Hull by telephone, and Hull expressed his desire to press charges against Hamrick for the alleged theft. Armed with all the information set out above, Mixon advised Chasteen to accompany him to the local magistrate's office to sign a sworn statement.

### B. *Obtaining the Warrant*

Once Mixon and Chasteen arrived at the magistrate's office, Mixon had Chasteen sign a "sworn statement" that Mixon had already prepared for Chasteen (see plain-

---

1. Although the motion is styled in the alternative as a motion for new trial, the defendants have failed to brief out the applicable standards and how those standards apply to the facts of this case. Therefore, the Court will not devote a great deal of time to the alternative motion.

The Court will merely hold, at this time, that the defendants' motion for a new trial is hereby denied. From this point forward, the motion will be referred to simply as the defendants' Motion for Judgment Notwithstanding the Verdict.

tiff's exhibit # 1). The "sworn statement" clearly contains two overt misrepresentations as well as many glaring omissions.

First, the "sworn statement" declares that Chasteen was the owner of the valve grinding machine. However, as he admitted at trial, Mixon knew that neither Hull nor Chasteen owned the machine. Second, the statement declares that Hamrick took the machine with the intent to deprive the owner, allegedly Chasteen, of the property. Chasteen was not the owner of the machine, and, although Mixon claimed that he believed that Parks was the owner of the machine, Mixon never checked with Parks to determine if the machine had been taken without Parks' effective consent. Indeed, Mixon never even attempted to contact Parks. As for the omissions, the "sworn statement" does not contain the name of the true owner of the machine nor does it state what claim, if any, Chasteen, Hull, or HTC had to the machine. The statement does not set out the fact that Hamrick brought the machine with him when he originally went to work for HTC, nor does the statement set out the fact that Parks supposedly owned the machine and told Hull and Chasteen that he had loaned the machine to Hamrick. The statement does not set out the fact that HTC owed Hamrick for back wages. The statement also fails to set out the fact that Hull claimed to have a right to possession of the machine solely because he claimed that Parks owed him money.

### C. *The Arrest*

After obtaining the warrant, Mixon and Officer Jim Lane (Lane) left the police station and eventually proceeded to the HTC office. Mixon and Lane had been informed that Hamrick was expected to show up at the HTC office to pick up his wages. While driving past HTC, Mixon and Lane saw Hamrick's car parked out front, and they pulled in to arrest Hamrick. They identified Hamrick and placed him under arrest, handcuffed him, and took him outside.

Hamrick informed Mixon and Lane that he owned the valve grinding machine, but they continued with the arrest. At this point, Mixon and Lane claim that Hamrick

voluntarily agreed to sign a consent to search form allowing Mixon and Lane to search Hamrick's automobile. Hamrick denies signing the consent to search form, and Hamrick's son, who was observing the arrest, testified that he never saw Hamrick sign anything. Following the search of the automobile, Hamrick was transported to jail and processed. Ultimately, Hamrick was released and never prosecuted for the alleged theft.

### D. *Credibility of the Witnesses*

While the preceding facts comprise the events surrounding the investigation of the alleged crime, the issuance of the warrant, and Hamrick's subsequent arrest, there are also certain other factors that the Court feels compelled to set out that reflect on the credibility of the witnesses. First, Mixon was not only the investigating and arresting police officer; Mixon was also the pastor of Chasteen's church and Chasteen's friend. Moreover, during Mixon's testimony, he conveniently forgot to mention the fact that he was Chasteen's friend and had served as Chasteen's pastor. Instead, he made some vague statement about not being able to remember if he knew Chasteen before or after the arrest of Hamrick. It was not until Chasteen testified that the jury first heard about the relationship between Chasteen and Mixon. Additionally, Hull also testified that he and Mixon were friends.

Next, while taking the statement of Juan Duran, Mixon claimed that he had to write out the statement for Duran because, while Duran supposedly could read English, he could not write English. Mixon also admitted that he knew that the machine was not owned by Chasteen or Hull, and, yet, the sworn statement that Mixon wrote out for Chasteen stated that Chasteen was the owner of the valve grinding machine. While Mixon admitted that he filled out Chasteen's "sworn statement," the magistrate testified that Chasteen, and not Mixon, filled out the statement. While the jury could have interpreted the magistrate's statement as a simple mistake, they also could have interpreted the magistrate's statement as a deliberate attempt to

cover up for Mixon. Finally, Mixon admitted that he left "lots of facts" out of the "sworn statement" that he drafted for Chasteen. In short, the jury had every reason to doubt the credibility of the defendants and their witnesses.

The plaintiffs in this action originally brought suit against seven different parties, but, by the time the case was submitted to the jury, only three defendants had escaped dismissal or a directed verdict. These findings and conclusions will deal only with the three defendants who were left in the suit when the case was submitted to the jury (*i.e.*, Mixon, Lane, and James H. Cook, Chief of the Eustace Police Department (Chief Cook)). This concludes the Court's abbreviated recitation of the evidence. The Court's discussion of the evidence has been tailored specifically to address the five grounds asserted in support of the defendants' motion. In their motion, the defendants asserted that: (1) the Court erred in failing to determine, as a matter of law, that the defendants were immune from liability under the doctrine of qualified immunity; (2) there was insufficient evidence for the jury to have found a constitutional deprivation and insufficient evidence to justify the jury's award of damages; (3) there was insufficient evidence for the jury to have found lack of probable cause for the arrest warrant; (4) the Court erred in submitting a general verdict form to the jury; and (5) the Court erred in failing to submit a separate special issue on injury to the jury. With the above facts in mind, the Court will now address the specific complaints raised by the defendants.

## II. CONCLUSIONS OF LAW

The standard of review for motions for judgment notwithstanding the verdict can best be stated as follows:

> On motions for directed verdict and for judgment notwithstanding the verdict, the Court should consider all of the evidence—not just the evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of the moving party that the Court

believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied and the case submitted to the jury.

*Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 305–06 (5th Cir.1989) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc)); *see also Rouillier v. Illinois Cent. Gulf R.R.*, 886 F.2d 105, 108 n. 2 (5th Cir.1989). In short, this Court must uphold a jury's factual findings unless the facts and inferences point so strongly in favor of the moving party that the court believes that reasonable men could not arrive at a contrary verdict. *Rouillier*, 886 F.2d at 108 n. 2. This Court is compelled to abide by the rule that it is the function of the jury (*i.e.*, the traditional finder of the facts), and not the Court, to weigh conflicting evidence and inferences and determine the credibility of the witnesses. *Nowell v. Universal Elec. Co.*, 792 F.2d 1310, 1312 (5th Cir.1986), *cert. denied*, 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986). This Court is acutely aware of the sanctity of the jury's role in our system of adjudication, and while the Court acknowledges its duty when reviewing a motion for judgment notwithstanding the verdict, the Court dares only step lightly as it performs its obligation. *See Melear v. Spears*, 862 F.2d 1177, 1178 (5th Cir.1989).

A. *The defendants assert that the Court erred in failing to determine, as a matter of law, that the defendants were entitled to qualified immunity*

The defendants assert that this Court erred by not ruling on the issue of qualified immunity as a matter of law. After reviewing this contention and the defendants' arguments in support of this contention, the Court has concluded that there are three separate but related issues actually involved. Thus, the Court will break its discussion into three different subtopics.

The Court will discuss: (1) whether the issue of qualified immunity must always be determined by the Court as a matter of law; (2) whether the actions of an intermediary, such as a probable cause determination by a grand jury or a magistrate, break the chain of causation and shield defendants from liability;[2] and (3) whether the evidence in this case is so strong as to entitle the defendants to qualified immunity as a matter of law.

■ *1. Should qualified immunity always be determined as a matter of law by the Court.*—In relation to this point, the Court notes that two recent Fifth Circuit cases have touched on this issue. *Crowder v. Sinyard*, 884 F.2d 804, 822 (5th Cir. 1989); *Jennings v. Joshua Indep. School Dist.*, 877 F.2d 313, 317 n. 2 (5th Cir.1989). In *Crowder*, the Fifth Circuit recognized that the Second, Sixth, and Seventh Circuits have held that qualified immunity is always a question of law for the court to decide. *Crowder*, 884 F.2d at 822. Those circuits have concluded that a court should never charge a jury on the issue of qualified immunity. *Donta v. Hooper*, 774 F.2d 716, 719 (6th Cir.1985), *cert. denied*, 483 U.S. 1019, 107 S.Ct. 3261, 97 L.Ed.2d 760 (1987); *Llaguno v. Mingey*, 763 F.2d 1560, 1569 (7th Cir.1985); *see Stein v. Board of the City of New York*, 792 F.2d 13, 18 (2nd Cir.), *cert. denied*, 479 U.S. 984, 107 S.Ct. 572, 93 L.Ed.2d 576 (1986). They reason that the test to be applied is a purely objective one and must be determined by the judge before discovery ever occurs. *Donta*, 774 F.2d at 719. Those Courts go on to reason that if the law which the defendant is alleged to have violated is clearly established, then the qualified immunity defense must fail. *Id.* If the law is not clearly established, the defendant is immune. *Id.*

The Fifth Circuit, however, has not expressly adopted that theory; indeed, in *Crowder*, the Court discussed the issue but noted that the matter was not properly before it for determination. *Crowder*, 884 F.2d at 822. In *Jennings*, the Court went a step further and concluded that since the test to determine qualified immunity is objective rather than subjective, and the record in *Jennings* developed *sufficient undisputed facts*, the issue of qualified immunity, in that case, was one for the Court to decide as a matter of law. *Jennings*, 877 F.2d at 317 n. 2. In the case *sub judice*, however, the evidence was clearly disputed. Thus, based on the language contained in *Jennings*, the question of qualified immunity was one for the jury and not the Court. In light of *Jennings* and *Crowder*, this Court feels that it acted properly in this case by instructing the jury on the issue of qualified immunity.

Additionally, the Court notes that the defendant did not object to the instruction given to the jury on the issue of qualified immunity; indeed, the defendants objected to the fact that the Court did not submit a special interrogatory on qualified immunity to the jury. As a result, the defendant cannot now complain that the issue of qualified immunity was an issue that should have been determined by the Court solely as a matter of law. *See Crowder*, 884 F.2d at 822. For these reasons, the Court cannot grant the defendants' motion for judgment notwithstanding the verdict on this ground.

■ *2. Should the action of an intermediary, such as a probable cause determination by a grand jury or a magistrate, break the chain of causation and shield the defendants from liability.*—At one time, the rule in the Fifth Circuit was

---

**2.** The issue of whether the causal chain can be broken is not directly related to the issue of qualified immunity, but the two have been so closely associated that they are often hard to distinguish. While the Court recognizes the distinction between the two issues, the Court will nevertheless discuss the causal connection issue in its general discussion of immunity because that is the context in which the defendants have raised it. In their motion, the defendants contend that if an arrest warrant has issued, the arresting officer will not be liable for false arrest or false imprisonment. In support of that proposition, the defendants cite *McCollan v. Tate*, 575 F.2d 509, 513 (5th Cir 1978), *rev'd on other grounds*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Thus, the Court finds it necessary to address the contention that the defendants are apparently attempting to raise, *i.e.*, what effect, if any, the issuance of a warrant has in shielding a police officer from liability.

that, if the facts supporting an arrest were put before an intermediary such as a magistrate or grand jury, the intermediary's decision to issue a warrant or return an indictment broke the causal chain and insulated the initiating party from liability. *Smith v. Gonzales,* 670 F.2d 522, 526 (5th Cir.), *cert. denied,* 459 U.S. 1005, 103 S.Ct. 361, 74 L.Ed.2d 397 (1982) (citing *Rodriquez v. Ritchey,* 556 F.2d 1185, 1193 (5th Cir.1977), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978)).

However, after the Fifth Circuit's decision in *Smith,* the Supreme Court held that an officer who initiates the procurement of a warrant is not necessarily shielded from liability merely by the issuance of a warrant. *See Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 1095–98, 89 L.Ed.2d 271 (1986). As for the specific theory that the intermediary's decision to issue a warrant breaks the causal chain, the Supreme Court has specifically held that such a theory is inconsistent with their interpretation of section 1983.[3] *Id.* 106 S.Ct. at 1098 n. 7; *U.S. v. Burzynski Cancer Research Inst.,* 819 F.2d 1301, 1309 (5th Cir.1987), *cert. denied,* 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 990 (1988). In *Malley,* the Court stated that section 1983 is read against the background of tort liability that makes a man responsible for the natural consequences of his actions; therefore, since the common law recognized the causal link between submission of a complaint and an

ensuing arrest, the Supreme Court has read section 1983 as recognizing the same causal link. *Malley,* 106 S.Ct. at 1098 n. 7. The Court also stated that where an officer of reasonable competence would not have requested a warrant, a given officer could not excuse his own incompetence by pointing to the greater incompetence of a magistrate. *See Id.* at 1098 n. 9. Consequently, under *Malley,* this Court must conclude that the chain of causation was not broken in this case by the magistrate's apparent determination of probable cause. The Court cannot grant the defendants' motion for judgment notwithstanding the verdict on this ground.

*3. Was the evidence so strong as to justify the Court to determine the issue of qualified immunity as a matter of law.[4]*

■ *(a) Officer Dewayne Mixon*—The Court must note that there was ample evidence from which the jury could have found that defendant Mixon was not entitled to qualified immunity. As a general rule, government officials are shielded from liability under the doctrine of qualified immunity as long as their actions can *reasonably* be thought consistent with the rights they are alleged to have violated. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). In other words, government officials are shielded from liability for civil damages

**3.** However, in *Hand v. Gary,* 838 F.2d 1420, 1427–28 (5th Cir.1988), the Fifth Circuit stated that the chain of causation can be broken by an independent intermediary, but only where all the facts are presented to that intermediary and no relevant information is withheld. The Fifth Circuit went on to state that any misdirection of the magistrate or the grand jury by omission or commission perpetuated the taint of the original official behavior. *Id.* Although *Hand* was decided two years after the decision in *Malley,* the Fifth Circuit did not expressly cite *Malley* or address the apparent conflict between the two cases. *Id.* It is quite possible that the Fifth Circuit concluded that *Malley* was inapplicable for some reason or that *Malley* was somehow distinguishable. Regardless of the Fifth Circuit's reason for not discussing *Malley* in the *Hand* decision, this Court would like to point out that the result would be the same in this instance even if this Court applied *Hand.* Causation would not be broken because Officer

Mixon did indeed misdirect the magistrate both by omission and commission. Mixon represented that Chasteen owned the valve grinding machine when Mixon knew that he did not. As stated in this Court's discussion of the facts, the majority of the circumstances relating to and surrounding the theft were also omitted from the "sworn statement." Thus, under *Hand,* the causal chain would not be broken and Officers Mixon and Lane would not be shielded from liability simply because the magistrate issued the arrest warrant.

**4.** The Court will only determine this issue in relation to Lane and Mixon. As discussed *infra* at page 1399, the Court has concluded that there was insufficient evidence to find that Chief Cook deprived the plaintiff of any constitutional rights. Thus, there is no point in discussing qualified immunity as it may or may not relate to Chief Cook.

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing would violate that right. *Melear,* 862 F.2d at 1183. The right to be free from unreasonable search and seizure is a clearly established constitutional right; as the Fifth Circuit has stated, a classic Fourth Amendment violation occurs when a law enforcement official makes a decision to arrest an individual without a valid arrest warrant or absent any circumstances that would justify such an arrest. *Brown v. Byer,* 870 F.2d 975, 978 (5th Cir.1989).

■ In specific relation to Mixon, the Court notes that a police officer applying for a warrant is not immune if a reasonably well trained officer, in that officer's position, would have known that probable cause did not exist to support the application for the warrant. *Malley,* 106 S.Ct. at 1098; *Jennings,* 877 F.2d at 317; *Burzynski Cancer Research Inst.,* 819 F.2d at 1309. A law enforcement official will not be shielded from liability if, on an objective basis, it is obvious that no reasonable officer would have concluded that a warrant should issue. *Malley,* 106 S.Ct. at 1096. Immunity is not available if the officer's request for the warrant was outside the range of the professional competence expected of an officer. *Malley,* 106 S.Ct. at 1098 n. 9.

■ The jury could have easily determined, based on the evidence in this case, that Mixon was not shielded from liability under the theory of qualified immunity. There is ample evidence that Mixon misrepresented certain facts to the magistrate and omitted certain other facts when procuring the warrant. From the facts as Mixon knew them, the jury had strong evidence on which to find that a reasonably competent officer, in Mixon's position, could not have believed that probable cause existed to support the application for the warrant. The facts and inferences do not point so strongly and overwhelmingly in

favor of Mixon on this issue that the Court believes that reasonable men could not have arrived at a contrary verdict. *Dean,* 885 F.2d at 305–06. Consequently, the Court cannot grant the defendants' motion for judgment notwithstanding the verdict based on this point. *Id.*

■ *(b) Officer Jim Lane*—As for Officer Lane, it must be noted that a law enforcement officer can be held liable for executing a facially valid and regular warrant if he acted in "bad faith" or with notice of an infirmity in the warrant. *See Turner v. Raynes,* 611 F.2d 92, 93 (5th Cir.), *cert. denied,* 449 U.S. 900, 101 S.Ct. 269, 66 L.Ed.2d 129 (1980); *see also Hamill v. Wright,* 870 F.2d 1032, 1036*(5th Cir. 1989). The jury could certainly have inferred from the evidence presented at trial and from the circumstances surrounding the arrest of Hamrick, that Officer Lane knew of the infirmities in the warrant. If, indeed, the jury found that Lane knew of the infirmities in the warrant, and based on the evidence the jury would have been justified in determining that he did, then the jury could have found that Lane was not entitled to qualified immunity. As the Fifth Circuit noted in *Hamill* and *Turner,* absent undisputed evidence, such a determination should generally be left to the jury. *Hamill,* 870 F.2d at 1036; *Turner,* 611 F.2d at 93.

Prior to the submission of this case to the jury, the Court could not, as a matter of law, have held that Lane was entitled to qualified immunity. By the same token, the Court cannot now hold, as a matter of law, that Lane is entitled to qualified immunity. There was evidence from which the jury could have inferred that Lane, just like Mixon, knew all the circumstances surrounding the alleged theft. Consequently, a fact issue was presented to the jury as to whether or not Lane reasonably believed that he was executing a valid arrest warrant. The facts and inferences do not point so strongly and overwhelmingly in favor of Lane that the Court believes that reasonable men could not have arrived at a contrary verdict. *See Dean,* 885 F.2d at 305–06. It would be improper for the Court to

grant a motion for judgment notwithstanding the verdict on this issue. *Id.*

In relation to the issue of the unlawful search of Hamrick's automobile, the Court did not instruct the jury on qualified immunity. The Court simply determined that the issue of qualified immunity, as it related to the unlawful search issue, was not raised by the evidence. The sole issue regarding the search was whether the consent to search form was signed by Hamrick or forged by Mixon and Lane. The Officers could not have had a reasonable belief that the search was lawful if they had, in fact, forged the consent form. The Court also notes that no objection was made on the grounds that the immunity defense was not applied to the search issue.

In conclusion, the Court finds that the jury was justified in finding that Mixon and Lane were not entitled to qualified immunity, and the evidence was not such as to justify the Court to determine the issue as a matter of law. The facts and inferences do not point so strongly in favor of Mixon and Lane on the issue of qualified immunity as to make the Court believe that reasonable men could not have arrived at a contrary verdict. *See Dean*, 885 F.2d at 306. Additionally, the defendants did not object to the qualified immunity instruction given. Therefore, the Court cannot grant the defendants' motion for judgment notwithstanding the verdict as to this claim. *Id.*

B. *Sufficiency of the Evidence as to Constitutional Deprivation and Damages*

The defendants assert that there was insufficient evidence for the jury to have found that there was a constitutional deprivation and insufficient evidence to justify the jury's award of damages.

*1. Despite the defendants' contentions, there was evidence presented to the jury that could have supported a verdict against Lane and Mixon on the following claims.*

■ *(a) The first claims submitted to the jury were whether Mixon and Lane* *had violated the plaintiff's rights to be free from illegal seizure of the person and to be free from a deprivation of liberty without due process of law.*—The Court notes that there was ample evidence that Hamrick was arrested under an invalid warrant issued by a magistrate who was not neutral and detached and issued without probable cause. Without restating the evidence and the Court's discussion of that evidence, the Court will merely state its conclusion of law that the evidence was clearly sufficient on this claim. The facts and inferences do not point so strongly and overwhelmingly in favor of Mixon and Lane that reasonable men could not have arrived at a contrary verdict; thus, the defendants' motion for judgement notwithstanding the verdict as to this claim must be denied. *See Dean*, 885 F.2d at 305–06.

*(b) The second claim submitted to the jury was whether Mixon and Lane had violated the plaintiff's rights by subjecting him to the unlawful search of his automobile.*—It is uncontested that the search of Hamrick's automobile was conducted without a warrant. As a result, the only real issue before the jury was whether the plaintiff had consented to the search of his automobile by signing a consent to search form. The defendants produced a consent to search form that they claimed was signed by Hamrick. Hamrick, however, denied signing the consent form, and the plaintiff's son, who was a witness at the scene, testified that he never observed plaintiff sign a consent form. During deliberations, the jury called for the consent form that plaintiff supposedly signed and all other copies of plaintiff's signature that were available from the exhibits admitted during trial. Based on the testimony at trial and a comparison of the signatures, the jury could have easily concluded that the signature on the consent form was not the signature of plaintiff.[5] Consequently, there was substantial evidence from which a reasonable jury could have found that Mixon and Lane violated plaintiff's civil rights by unlawfully searching his vehicle. After considering all the evidence in the

---

**5.** The Court would like to note that neither party produced any expert testimony regarding the validity of plaintiff's signature on the consent form.

light most favorable to the nonmovant, the Court cannot say that the facts and inferences point so strongly and overwhelmingly in favor of Mixon or Lane that the Court believes that reasonable minds could not have arrived at a contrary verdict; thus, the motion for judgment notwithstanding the verdict cannot be granted as to this claim. *See Dean,* 885 F.2d at 305–06.

■ *2. Finally, the Court addresses the jury's finding that the Chief of Police for the City of Eustace violated a constitutional right of the defendant by formulating an unconstitutional policy or allowing the continuance of an unconstitutional custom.*—The jury in this case was properly instructed that Chief Cook could only be found liable for damages to Hamrick if Chief Cook was directly involved in the deprivation of any of Hamrick's constitutional rights or if Chief Cook formulated a policy or allowed the existence of a custom that deprived Hamrick of any constitutional rights.[6] *See Hinshaw v. Doffer,* 785 F.2d 1260, 1263 (5th Cir.1986); *see also Thompkins v. Belt,* 828 F.2d 298, 304–05 (5th Cir.1987). There is no evidence that Chief Cook was directly involved in a violation of Hamrick's constitutional rights or that Chief Cook formulated a policy or allowed the existence of a custom that deprived Hamrick of a constitutional right. A reasonable juror could not have made such a determination. The facts and inferences point so strongly and overwhelmingly in favor of Chief Cook that the Court believes that reasonable men could not have arrived at a contrary verdict. *See Dean,* 885 F.2d at 305–06. Thus, the Court must grant the defendants' motion for judgment notwithstanding the verdict as to this particular claim. *See id.* Therefore, as to the finding of the jury that James H.

Cook violated a constitutional right of plaintiff, this Court will enter its judgment notwithstanding the jury's verdict that Chief Cook have judgment in and over Hamrick and that Hamrick take nothing in his suit against Chief Cook.

■ *3. The defendants also claim that the evidence was insufficient to justify the amount of damages, and they ask that nominal damages be awarded.*—The jury awarded damages against Mixon in the amount of $30,000 and damages against Lane in the amount of $5,000. A damage award by the jury should be overturned only upon a "clear showing" that such award is excessive or resulted from passion or prejudice. *Westbrook v. General Tire and Rubber Co.,* 754 F.2d 1233, 1241 (5th Cir.1985). The defendants have failed to make such a showing. As the defendants admit in their Amended Motion for Judgment Notwithstanding the Verdict, mental and emotional distress are compensable injuries. The evidence in this case indicates that Hamrick suffered substantial mental and emotional distress. Hamrick's reputation in the community was seriously damaged, and he was unable to obtain further employment. He was greatly embarrassed. Additionally, Hamrick's wife, who was terminally ill at the time, found out about his arrest, and Hamrick suffered emotional distress over this factor. The Court cannot say that the damages awarded by the jury were excessive. The Court cannot grant a judgment notwithstanding the verdict or a new trial based on this issue.

## C. *Sufficiency of the Evidence as to lack of Probable Cause for the Ar-*

---

6. In their motion for judgment notwithstanding the verdict, the defendants claim that the plaintiffs also asserted a claim against Chief Cook for deprivation of liberty based on the rather novel theory that Hamrick was deprived of his liberty when Chief Cook obtained Hamrick's consent to take a polygraph test. While the plaintiff's complaint could be interpreted to assert this claim, such a theory was not presented to the jury and was not raised by the evidence. If the Court omits any issue of fact raised by the pleadings or evidence, each party waives the right to a trial by jury of the issue so omitted unless the

party demands its submission to the jury. FED. R.CIV.P. 49(a); *see J.C. Motor Lines, Inc. v. Trailways Bus Sys.,* 689 F.2d 599, 602–03 (5th Cir.1982). Neither party demanded submission of this issue to the jury. When an issue is so omitted, the Court may make a finding on the issue or it shall be deemed to have made such a finding. FED.R.CIV.P. 49(a); *J.C. Motor Lines,* 689 F.2d at 602. For the sake of clarity, any such claim raised in plaintiff's complaint is hereby found to be groundless. Chief Cook did not deprive Hamrick of his liberty by asking him to take a polygraph test.

*rest Warrant*[7]

The Court has no desire to restate the evidence set out in the beginning of these findings and conclusions. Instead, the Court will merely state that in light of all the facts surrounding the alleged theft, the jury could certainly have found that no probable cause existed for the issuance of the arrest warrant. There were several material facts omitted from the supporting affidavit and one grave misrepresentation. Based on these facts, the Court cannot now conclude that the facts and inferences point so strongly in favor of the defendants on this issue that the Court believes that reasonable men could not have arrived at a contrary verdict. *See Dean*, 885 F.2d at 305-06.

In addition, as the defendants point out in their Amended Motion for Judgment Notwithstanding the Verdict, a police officer's liability turns on the issue of immunity and not on a determination of probable cause. *Jennings*, 877 F.2d at 316-17. In light of the defendants' knowledge of this fact, the Court cannot understand why the defendants are asserting this argument now. For these reasons, the Court cannot grant a judgment notwithstanding the verdict as to this issue.

D. *Did the Court Err by Submitting a General Verdict Form to the Jury*

■ The Court is well aware that, when reviewing a motion for judgment notwithstanding the verdict, the submission of a general verdict form often hampers the Court's own review of the jury's verdict.[8] However, even with that knowledge, the Court decided that it would submit a general verdict form to the jury in this case. In this particular case, the Court felt that it would be less confusing to the jury to submit a general verdict form.

■ With this short explanation in mind, the Court notes that a nonspecific general verdict is acceptable, even in a case alleging multiple theories of liability, if each of the several theories is sustained by the evidence and legally sound. *Jones v. Miles*, 656 F.2d 103, 106 (5th Cir.1981). The discretion to use a general verdict rests with the trial judge. *Id.* at 106 n. 4. If the judge then *accepts* a general verdict in a case containing multiple issues, the verdict is immune from attack only as long as the evidence under each count is sufficient to authorize the result. *Id.* In this case, as set out above, the Court did not accept the jury's verdict in relation to Chief Cook, and the Court will enter judgment notwithstanding the jury's verdict in Chief Cook's favor. However, in relation to the portion of the verdict against Mixon and Lane, the Court will accept the jury verdict and enter judgment in Hamrick's favor.

As to the portion of the verdict accepted by the Court (*i.e.*, the verdict against Mixon and Lane), the evidence was sufficient for the jury to have found that Mixon and Lane violated Hamrick's constitutional rights by subjecting Hamrick to the unreasonable seizure of his person and depriving Hamrick of his liberty without due process of law. Additionally, the evidence was clearly sufficient for the jury to have found that Mixon and Lane violated Hamrick's constitutional rights by subjecting Hamrick to the unlawful search of his automobile. Consequently, in relation to Mixon and Lane, the evidence is sufficient under each count to authorize the verdict; therefore, the general verdict, as to Mixon and Lane, is immune from attack. *See Id.* (citing *Smith v. Southern Airways, Inc.*, 556 F.2d 1347, 1347 (5th Cir.1977)).

---

**7.** The defendants lead off with a discussion of the statutory requirements for a warrant under Texas law. The defendants have obviously forgotten that, during the course of the trial, they requested that the Court rule on whether the warrant met the Texas statutory requirements, and the Court found in the defendants' favor and held that the warrant did meet those requirements.

**8.** The Court also realizes that appellate review of the jury's verdict is also hampered by the submission of a general verdict. This Court did not intend to make its own job more difficult, and, in the event the case is appealed, the Court certainly did not intend to make the Fifth Circuit's review more difficult. In submitting a general verdict form, the Court felt that it would make the jury's task less difficult and reduce the likelihood of confusing the jury.

**E.** *Did the Court Err by Failing to Submit a Separate Special Issue on Injury to the Jury*

■ The Court submitted the following question to the jury:

What sum of money attributable to each defendant, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Billy Don Hamrick for the damages, if any, suffered by him which were proximately caused by a violation of his Constitutional rights.

The question above tells the jury to award a sum of money for the damages, if any, suffered by Billy Don Hamrick. In effect, the question inquires as to whether Hamrick was injured. If Hamrick had not been injured, the jury could not have awarded damages. The issue of injury is subsumed by the question posed to the jury. Omission of a special issue is not reversible error where the issue may be inferred from the jury's answer. *See J.C. Motor Lines Inc. v. Trailways Bus Sys.*, 689 F.2d 599, 602–03 (5th Cir.1982). Thus, the Court cannot enter a judgment notwithstanding the verdict based on this contention.

### III. CONCLUSION

Based on the facts and law as set out above, the Court is of the opinion that the defendants' Motion for Judgment Notwithstanding the Verdict should be GRANTED IN PART AND DENIED IN PART. It is, therefore,

ORDERED that Chief Cook have judgment over Billy Don Hamrick notwithstanding the verdict of the jury and that Billy Don Hamrick take nothing in his suit against Chief Cook notwithstanding the verdict of the jury. It is, further,

ORDERED that the remainder of the defendants' Motion for Judgment Notwithstanding the Verdict be DENIED and that judgment be entered in accordance with the jury's verdict as to Mixon and Lane. It is further

ORDERED that the defendants' alternative motion for new trial is hereby DENIED.

### FINAL JUDGMENT

On the 8th day of January, 1990, the above styled and numbered civil action came on for trial before the Court and jury, William M. Steger, District Judge, presiding. Prior to the submission of the case to the jury, the Court granted, in part, the defendants' motion for directed verdict. The Court directed the verdict as follows: (1) in favor of the City of Eustace as to all claims alleged; (2) in favor of A.G. Jones, Mayor of the City of Eustace, as to all claims alleged; (3) in favor of the defendants as to the claims of libel and slander alleged against them; and (4) in favor of the defendants as to the claim of conspiracy to deprive plaintiff of his constitutional rights. As to the issues and parties remaining, the jury rendered its verdict consisting of answers to interrogatories on January 10, 1990, finding that defendants James H. Cook, Dewayne Mixon, and Jim Lane had deprived the plaintiff of one or more of his constitutional rights. On the issue of damages, the jury found that: (1) James H. Cook was responsible for $20,000.00 in damages to plaintiff; (2) Dewayne Mixon was responsible for $30,000.00 in damages to plaintiff; and (3) Jim Lane was responsible for $5,000.00 in damages to plaintiff. Following the return of the jury's verdict, the defendants timely filed their motion for judgment notwithstanding the verdict. Pursuant to the above mentioned motion, the Court entered its order granting judgment in favor of James H. Cook notwithstanding the jury's verdict. In light of the foregoing facts, it is, therefore,

ORDERED that plaintiff, Billy Don Hamrick, have judgment over and against Dewayne Mixon in the amount of $30,000.00 with post-judgment interest thereon at the rate of _____ per cent per annum from the date entered below. The plaintiff failed to request prejudgment interest; thus, such interest will not be considered or awarded. It is, further,

ORDERED that plaintiff, Billy Don Hamrick, have judgment over and against Jim Lane in the amount of $5,000.00 with post-judgment interest thereon at the rate

of _____ per cent per annum from the date entered below. The plaintiff failed to request pre-judgment interest, thus, such interest will not be considered or awarded. It is, further,

ORDERED that defendants City of Eustace, A.G. Jones, and James H. Cook have judgment over and against plaintiff, Billy Don Hamrick, and that plaintiff, Billy Don Hamrick, take nothing by virtue of his claims against these defendants. It is, further,

ORDERED that plaintiff, Billy Don Hamrick, take nothing from the defendants in regard to the plaintiff's claims for libel, slander, and conspiracy. It is, further,

ORDERED that in accordance with this Court's Order Granting Plaintiff's Request for Attorneys' Fees, Ronald R. Waldie hereby recover from the defendants the sum of $10,830.00 in attorney fees plus expenses of $153.00 with interest thereon at the rate of _____ per cent per annum from the date of this judgment. It is, further,

ORDERED that in accordance with this Court's Order Granting Plaintiff's Request for Attorneys' Fees, Barry Elliott recover from the defendants the sum of $5,375.00 in attorney fees with interest thereon at the rate of _____ per cent per annum from the date of this judgment. It is, further,

ORDERED that any motions not previously ruled on are hereby DENIED.

All costs are to be borne by defendants Mixon and Lane.